JOHN MANGOLD v. ERNEST BACON, Appellant.

In Banc, June 28, 1910.

1. **THEORY AT TRIAL: Controlling on Appeal: Tax Judgment.** The case on appeal must be disposed of on the same theory it was tried upon below. Where the case was tried upon the sole theory that the payment of taxes after suit brought alone rendered the subsequent judgment therein void and in consequence the sale and sheriff's deed, a judgment for plaintiff setting aside the tax judgment, sale and deed must stand or fall on appeal upon that same theory. That being the sole theory of plaintiff's case, he cannot have the judgment for taxes, the sale and deed set aside, by a showing that the judgment was concocted in fraud and that defendant, who was the purchaser at the tax sale, had knowledge of that fraud.

2. ———: ———: ———: **Inadequacy of Price.** A judgment based, largely or partly, on a finding that the price paid for the land at the tax sale was grossly inadequate, where the petition does not in plain terms count upon inadequacy of price as a ground for setting aside the sale, and where when the value of the land first came up at the trial the court ruled that under the petition that question was not in the case, and defendant accepted that ruling, though the court afterwards admitted some evidence of value "subject to objection," cannot stand. *Held*, by LAMM, J., dissenting, that if the bill allege facts showing inadequacy and the court's finding is responsive thereto and it was a trial theory, the judgment may be sustained on that theory on appeal.

3. **TAX JUDGMENT: Prior Payment of Taxes.** The payment of taxes, interest and penalties, after suit is brought thereon, is not alone sufficient to avoid a subsequent judgment and sale thereunder. [Disapproving Harness v. Cravens, 126 Mo. 233.]

Mangold v. Bacon.

4. ———: ———: **Knowledge of Owner: Estoppel.** Where the owner of land after suit brought for taxes, paid the taxes, interest and penalties, and despite that fact the suit was, without fraud, prosecuted to judgment, and the judgment is in all respects regular, and he thereafter knew the land was advertised for sale under that judgment and stood aloof and gave no notice to prospective purchasers, who bought with no knowledge that the taxes had been paid before judgment, he is estopped from undertaking to attack a title he had thus permitted to pass.

5. ———: ———: **Execution Sale: Inadequacy of Price: Unconscionable Fraud.** Inadequacy of price alone is not a sufficient ground for setting aside a tax sale. Tax sales under tax judgments are not different from other judicial sales. The rules applied to other execution sales should be applied to tax executions,—to no greater and to no less an extent. And while inadequacy of price may be a circumstance tending to show that a sale was not fairly conducted, yet inadequacy of price will not alone vitiate any execution sale.

  *Held*, by LAMM, J., dissenting, that a consideration so inadequate as to shock the conscience not only of the chancellor but of all men of common sense may be a distinct ground of equitable relief, where no other may be laid hold of. And where after suit for taxes was brought the landowner paid the taxes, interest and penalties and they were marked paid on the collector's book, and the suit nevertheless was prosecuted to judgment without the owner's knowledge and the land sold to defendant for less than the costs, the State thereby getting no taxes as a result of the sale, and defendant getting plaintiff's thousand-dollar farm for $12.50, the court should make a precedent, if none exists, and set the sale aside. Such inadequacy of consideration is a badge of fraud, for it leaves the State to whose use the taxes were levied with nothing, and deprives the owner of his land for no good to any one, and the purchaser at such a price takes, not as an innocent purchaser, but with his title tainted with that fraud. And there was actual fraud in that the owner after he paid the taxes was lulled to sleep, and in that when the collector went on despite the payment no notice was given the owner of the intention to go on, or of the judgment, execution or intended sale.

6. ———: ———: **Pleading Fraud.** Where the judgment and sale on their face are regular, and can be held to be fraudulent only because of facts *dehors* the record, then all things not patent must be pleaded and proven. So that if the tax judgment and sale are regular on their face, although prior to the judg-

ment the landowner paid the taxes sued for, the petition to set them aside must allege, and the proof must show, either that there was fraud in the concoction of the judgment in which defendant participated or that defendant bought at the tax sale with knowledge of facts *dehors* the record that would vitiate the sale,—for instance, that he knew the taxes, interest and penalties had been paid prior to the judgment. And where the case was tried below on the sole theory that the mere payment of the taxes alone avoided the judgment, the cause on an appeal from a judgment setting aside that judgment will be remanded for the purpose of permitting plaintiff to amend and show the fraud, as being the safest course.

Appeal from Butler Circuit Court.—*Hon J. C. Sheppard,* Judge.

REVERSED AND REMANDED.

*Ernest 4. Green* and *James F. Green* for appellant.

(1) The title of a purchaser under a judgment for back taxes cannot be defeated by showing that the taxes for which the judgment was rendered had been paid before the judgment was rendered. Evarts v. Lumber Co., 193 Mo. 433; Hill v. Sherwood, 96 Mo. 125; Jones v. Driskill, 94 Mo. 190; Gibbs v. Southern, 116 Mo. 204. (2) Plaintiff's petition wholly failed to state a cause of action and was insufficient to support the judgment rendered. A judgment in a tax suit cannot be collaterally attacked by one who is a defendant in that suit and who was properly brought in by personal service. See cases cited above. (3) Inadequacy of price is insufficient to render an execution sale void where due notice was given of said sale. Walker v. Mills, 210 Mo. 690; Jones v. Driskill, 94 Mo. 199. (4) No issue of fraud was raised by the pleadings in the case. All that the collector did in the tax suit was to neglect to bring to the attention of the circuit court the fact that the taxes had been paid after the suit was instituted. But in Evarts v. Lumber Co.,

193 Mo. 452, in which all of the judges of Division One concurred, the court said: ''The suppression of the fact from the knowledge of the court that the taxes had been paid was not such a fraud in the very concoction of the judgment as to make the judgment void.'' That inadequacy of consideration, unless coupled with other facts and circumstances which amount to fraud or unconscionable dealing, is not sufficient to set aside a sale, fair on its face, is declared in the following cases: Walker v. Mills, 210 Mo. 684; Derby v. Donahoe, 208 Mo. 706; Welch v. Mann, 193 Mo. 327; State ex rel. v. Elliott, 114 Mo. App. 562; Martin v. Castel. 193 Mo. 183; Cubbage v. Franklin, 62 Mo. 364; Wagner v. Phillips, 51 Mo. 117; Hammond v. Scott, 12 Mo. 8; Gordon v. O'Neil, 96 Mo. 350; Bryant v. Jackson, 99 Mo. 585; Cobb v. Day, 106 Mo. 278; Phillips v. Stewart, 59 Mo. 491; Walters v. Hermann, 99 Mo. 529; Landrum v. Bank, 63 Mo. 48; Duncan v. Sanders, 43 Mo. 29; Holden v. Vaughan, 64 Mo. 590; Brown v. Railroad, 43 Mo. 297; Hammond v. Scott, 12 Mo. 10. (5) This case was determined upon an issue not raised by the pleadings, and one which defendant had no opportunity to contest in the trial court. That it has not hitherto been the rule of this court to dispose of a case on appeal on any other theory than that on which it was tried in the lower court, is apparent upon an examination of the following very recent cases, as well as others decided by this court: St. Louis v. Contracting Co., 210 Mo. 502; Williams v. Lobban, 206 Mo. 407; Hof v. Railroad, 213 Mo. 470; Riggs v. Railroad, 216 Mo. 318; Brick Co. v. Railroad, 213 Mo. 726; Fulwider v. Gas Company, 216 Mo. 597; State ex rel. v. Neosho, 203 Mo. 59; Morrison v. Roehl, 215 Mo. 557; Smart v. Kansas City, 208 Mo. 202; Kenefick v. Ins. Society, 205 Mo. 310.

*D. W. Hill* for respondent.

(1) The payment of the taxes by respondent extinguished the State's lien, and this being a direct proceeding to set aside the back tax judgment and back tax deed the payment of the taxes and all other facts and circumstances in the case were properly pleaded and proven. R. S. 1899, sec. 9266; Harness v. Cravens, 126 Mo. 233; Hampton v. McClanahan, 143 Mo. 501; Aurora ex rel. v. Lindsay, 146 Mo. 509; Huber v. Pickler, 94 Mo. 387; Hoge v. Hubb, 94 Mo. 503; McClure v. Logan, 59 Mo. 234. (2) When the price realized by a sheriff at a public sale of real estate is so inadequate as to shock the moral sense and outrage the conscience, the courts will interfere to promote the, ends of justice, and on that ground alone set aside the sale. Guinan v. Donnell, 201 Mo. 202; Yeaman v. Lepp, 167 Mo. 61; Davis v. McCann, 143 Mo. 172; Corrigan v. Schmidt, 126 Mo. 313; Knoop v. Kelsey, 120 Mo. 642; Gordon v. O'Neil, 96 Mo. 350; Holden v. Vaughan, 64 Mo. 438; Mitchell v. Jones, 50 Mo. 598; Railroad v. Brown, 43 Mo. 294; Byers v. Surget, 60 U S. (19 How.) 311; State v. Elliott, 114 Mo. App. 566. (3) Section 9244, R. S. 1899, provides that a book of delinquent lands shall be kept by the collector, which was done in this case and the taxes entered paid on this book long before the sale, which was notice to the purchaser. (4) The appellant is not an innocent purchaser for value and without notice. The law conclusively presumes that the appellant, as a purchaser at a public sale, had notice of all the facts pleaded and proven by plaintiff, if the defendant does not affirmatively set up and prove the plea of "innocent purchaser for value and without notice." There is no such plea or proof in this case. Holdsworth v. Shannon, 113 Mo. 524; Young v. Schofield, 132 Mo. 650. (5) Only a fee bill could have been issued against Mangold for the costs of the tax suit, which could not have

served as an execution until thirty days after demand, and the amount of the execution in this case was never demanded. R. S. 1899, sec. 3236.

GRAVES, J.—This cause has been so much discussed and written upon that I am impressed with the idea that a further and fuller statement of the pleadings and evidence should be made.

Plaintiff, who was successful below, lodged his petition with the circuit court of Butler county, the substantial allegations of which are as follows:

He avers (1) that on February 12, 1902, he was the owner of the land involved in this suit; (2) that on February 13, 1902, he conveyed the same to William L. and Frances C. Hogan, husband and wife, for the price of nine hundred dollars; (3) that such grantors paid $100 cash and executed their notes and deed of trust for the balance; (4) thereupon Hogan and wife entered into possession of the property; (5) that on September 10, 1903, the collector of revenue for the county of Butler instituted suit against plaintiff, the two Hogans, Daniel Cochran, S. W. Foster and E. E. Pennington, the purpose of which suit was to enforce the State's lien against the land involved in this case for back taxes then delinquent for the years 1900 and 1901; (6) the petition then alleges due service of process upon the plaintiff Mangold and others; (7) that Mangold, with a view of stopping further proceedings as against the land in which he was interested as a beneficiary in a deed of trust, wrote to Souders, collector of revenue for Butler county, to obtain a statement of the amount of taxes due on the land in question; (8) that in December, 1903, said Souders did send to plaintiff Mangold a statement of the full amount of taxes due on the land in question, together with penalties, fees and costs; (9) that said Mangold upon receipt of a letter from the collector, sent to the collector the taxes, penalties,

fees and costs on the land involved in this suit for the years 1900 and 1901, in the sum of fifteen dollars; (10) that upon the payment of the sum aforesaid to said collector, Souders gave to the plaintiff Mangold a receipt for the taxes and penalties due on said land for the years aforesaid and marked the same paid upon the books of said collector's office, and that by so doing said land became fully discharged of the State's lien for back taxes for the two years aforesaid; (11) that after due service of process upon the two Hogans, as well as upon the plaintiff, and on the 31st day of December, 1903, said Hogan conveyed the land in question back to the plaintiff Mangold.; (12) said Mangold then avers in his petition that he relied upon the fact that he had paid the taxes, together with the penalties, for the years 1900 and 1901, on said land, and therefore paid no further attention to the tax suit instituted against him and others, aforesaid; (13) he also alleges that it was his belief that said suit would be dismissed at the proper time by the said collector Souders, and for that reason paid no further attention to the suit, but he fails to allege that there was ever any payment of accrued costs in the suit or any agreement that the suit would be dismissed without payment of costs by him; (14) that after due service of process, under the facts above detailed, judgment was taken against the defendants in said tax proceeding, not only for the costs of the proceeding, but for the taxes for the two years of 1900 and 1901, together with the penalties accruing by virtue of law upon said taxes; (15) that in pursuance of such judgment, regularly entered by the circuit court as aforesaid, and without any charge of fraud in the petition as against the collector or his attorney, execution was issued and the land sold to defendant Bacon for the aggregate sum of $12.50.

229 Sup—30

There is a statement in the petition thus reading: "Plaintiff further states that pursuant to said advertisement, as aforesaid, the sheriff of Butler county, Missouri, without the knowledge or consent of this plaintiff or either of his co-defendants, did on the 6th day of October, 1904, sell said land at public outcry to the highest bidder for cash, and that this defendant, Ernest Bacon, did then and there bid in said land for the price and sum of twelve dollars and fifty cents, which amount plaintiff now and here tenders and offers to refund to said Bacon, and plaintiff says that said land was then and there well worth the sum of one thousand dollars."

This is the only allegation in the petition with reference to the value of the land or with reference to the sale thereof at an inadequate price. There is no charge in the petition from beginning to end that the land sold for an inadequate price by reason of anything occurring from the date of the tax judgment to the date of the sale. In other words, the petition is clearly based upon the idea that the mere fact of the taxes having been paid between the time of service in the tax suit and the time of judgment, rendered the judgment void. Not only so, but it was void notwithstanding there was no allegation that any actual fraud was perpetrated by the collector, or any agreement between Mangold and the collector that the tax suit theretofore commenced should be dismissed without cost to Mangold or to those in privy with him.

No claim is made that the collector fraudulently procured the judgment. No claim is made that the collector agreed to see to a dismissal of the tax suit. No claim is made that Mangold had ever paid the accrued costs in the tax suit. No denial is made that the suit was properly brought. In fact, it stands admitted that the suit was properly brought, and that the taxes for the two years were due

at the time.  The petition when analyzed from end
to end, considering every averment therein, plants
plaintiff's right to relief upon the sole ground that he,
as a beneficiary in a deed of trust, had paid the ac-
knowledged taxes and penalties for the two years,
after suit had been brought, and for that reason, and
for no other, the judgment was void or voidable, and
therefore the sale thereafter made was inoperative and
conveyed no title.  Although he admits he was served
with process, he makes no claim that he attempted to
pay the costs of the proceeding, or that he had any
agreement with the collector, that when he paid the
taxes and statutory penalties, the suit should be dis-
missed.  There is no allegation in the petition that the
defendant, Bacon, had any knowledge of any irregular-
ity in the judgment.  There is no allegation that Bacon
knew what occurred between Mangold and the collector.
There is not, and could not be under the facts, any ques-
tion that the judgment was not regular upon its face.
The petition does not ask that the sale be set aside on
account of gross fraud either in the concoction of the
judgment, or by way of collusion or other fraud after
the judgment.  The petition squarely plants the case
on the ground, not that the sale was void by reason of
anything done by Bacon, or even after the judgment,
but on the ground of proof of the fact that Mangold
paid the taxes, interests and costs after suit and before
judgment.  When we use the words "taxes, interests
and costs" in this opinion we do not use them in the
sense that there was a payment of any costs already
accrued in the circuit court.  The evidence is all to the
contrary.  The statement sent to the collector, and the
amount paid by Mangold, only covered the taxes, in-
terest and county clerk's costs and so showed upon its
face.  At least it could be readily determined by Man-
gold, who had been served with process, that the state-
ment received only included debt and costs prior to
the institution of the tax suit.  This much is clear

from all the pleadings and evidence, and it is further clear that the collector made no agreement with Mangold as to the disposition of the suit then pending. At this time Mangold filed no answer in the case.

By the petition in the present case not an irregularity is charged from the date of the judgment to the date of the sale, except the allegation we have quoted as to the price paid for the land at the sale, and the incidental claim as to the value of the land.

In the course of the trial the following occurred:

"Q. You may state to the court what you think would be a fair value to place on that land in October, 1904?

"Mr. Green: If the court please, we desire to object to that for the reason that it is incompetent, irrelevant and immaterial, and it is tending to establish no issue in this case; the value of the lands has nothing to do with the cloud on the title.

"The court: I don't think it does.

"Plaintiff excepts to the ruling of the court.

"Mr. Green: We insist on his sticking to one specific matter pleaded; whether the payment of the taxes by Mangold makes the judgment void, or not.

"The Court: I don't think the value of the lands makes any difference in this suit. Of course sales have been set aside when it was shown that inadequacy of price was such as to shock the conscience of the court. I think this a matter as to whether the payment of the taxes renders the judgment void."

Later there appears the following in the record:

"By Col. Phillips:

"Q. You say then, Mr. Cochran, that if you hadn't thought the matter was all settled the land wouldn't have been sold at the tax sale for the price it did? A. That's what I said.

"Q. Do you know the value of the land at the time it sold? A. Yes sir.

"Mr. Green: We desire to renew our objection to this line of evidence, as being incompetent, irrelevant and immaterial, and tending to prove none of the issues in this cause.

"The court: I will hear it, subject to your objections.

"Mr. Green: We except.

"Q. What was the land worth on the 6th day of October, 1904? A. It was worth one thousand dollars.

"Col. Phillips: This is our case, your honor."

The testimony of this witness Cochran is of further interest. He had at one time been owner of the land. He was a party to the tax proceeding, but at the date of the suit had no apparent interest. When first placed upon the witness stand he gave some important testimony as to knowledge that Mangold possessed as to the sale of this property. Of course Mangold denies knowledge of the advertised sale, but when the testimony of Cochran, with the dates named, is considered, the reasonable impression is that Mangold was at all times, as his petition shows, relying upon the fact that he had paid the taxes, and was disregarding the judgment. This evidence reads.

"By Col. Phillips:

"Q. State your name please. A. Dan Cochran.

"Q. You are acquainted with the southeast quarter of the southwest quarter of section 2-23-5 east, Butler county, Mo.? A. Yes, sir.

"Q. I will ask you if you owned that land at one time? A. Yes, sir.

"Q. You were one of the defendants in a tax suit against the land for taxes for the years 1900-1901, were you not? A. Yes, sir.

"Q. Tell the court, if you know, about the taxes being paid on that land, and who paid them? A. Mr. Mangold—all I know is that Mr. Mangold told me to come in and pay them.

"Cross-Examination: By Mr. E. A. Green:

"Q. When was that? A. November or December of that year.

"Q. What year?—1903? A. I don't remember exactly when he told me—paid no attention as to that.

"Re-direct Examination: By Col. Phillips:

"Q. And that is the reason you didn't pay them? A. Yes sir.

"Q. Did you know anything about the sale of the land?

"Mr. Green: We object for the reasons mentioned—he is presumed to know.

"The Court: Objection overruled.

"Mr. Green: We except.

"Q. Do you know about it? A. Yes, sir.

"Q. What do you know about it? A. *It was advertised, but Mr. Mangold told me the taxes were all paid and I didn't pay any more attention to it. It wouldn't have been sold for the price it was if I hadn't thought Mr. Mangold told me the truth about it.*

"Re-cross examination: By Mr. Green:

"Q. *You knew then that the land was advertised?* A. Yes, sir."

As indicating the plaintiff's own construction of his petition the prayer thereof will best serve: "That said judgment, together with said deed based thereon, constitutes a cloud upon plaintiff's title to the above described premises, and that by reason thereof, this defendant is asserting title to said premises. Wherefore, the premises considered, plaintiff prays that said back tax judgment rendered as aforesaid be by this court declared to be null, void and of no effect, and that the sheriff's deed from Hogg, sheriff as aforesaid, to this defendant, be cancelled, annulled and for naught held," etc.

This record will require the consideration of several questions. First the real situation of the tax judgment under the pleaded and proven facts, and

second, and not the least important, the theory upon which the case was tried below, and therefore the theory upon which it should be tried here. Other questions may have to be discussed, but the two stated have been foremost in our mind. Such others as may be necessary will be discussed, and owing to the importance of the issues, will be discussed without reserve, so far as the individual views of the writer are concerned.

I. To our mind the first and most important question involved is the theory upon which the case was tried below. One cannot read the petition and the prayer thereto, without knowing that the idea of the plaintiff, and his distinguished counsel, was that the mere payment of the taxes due, after suit, rendered the judgment voidable. In other words, that when proof of such fact was made, the judgment for taxes was void, and for that reason all subsequent transactions, including the sale and tax deed, were void. The petition, elaborate as it is, does not count on fraud in the actual sale. It charges no collusion between the purchaser and the officer conducting the sale. It charges no knowledge upon the part of Bacon that there was even irregularity in the judgment. It does not, except inferentially, charge inadequacy of price. To say that this petition is based upon the idea of mere inadequacy of price at a tax sale, would be to distort the language of distinguished counsel who drew it. In every line of the petition can be read the idea that counsel were of the opinion that the tax judgment was void, and that on the sole idea that the taxes had been paid between the date of the institution of the suit and the date of the judgment. Not a line in the petition suggests wrong upon the part of the purchaser at the tax sale, nor *actual* fraud in the concoction of the judgment. The sole idea of the pleader seems to have been that the proof of the fact that the taxes had been paid

nullified the judgment, and through this nullification of the judgment all subsequent steps failed. In this we think the conclusions of law were wrongly drawn. Had the petition charged fraud in the very concoction of the judgment, then such question would be before us, but such is not the charge, nor can it be read therein. Had the petition charged the payment of the acknowledged debt, by Mangold, and further charged an agreement to dismiss the pending suit, without cost to Mangold, the question here would be different. It is not the province of this court to make and frame issues for litigants. Under the law we determine the question of error or no error upon issues framed and tried below.

It would be useless to count the cases wherein we have held that the case must be tried here upon the same theory as it was tried below. In other words, if the parties adopt a theory below, and try their case upon that theory, it must be determined here upon the same theory. A very recent one is Riggs v. Railroad, 216 Mo. 1. c. 318.

In the case at bar the case was tried upon the theory that the payment of those taxes released the State's lien upon this land, and a judgment thereafter on such lien was void. The pleader evidently had in view the case of Harness v. Cravens, 126 Mo. 233. That case would be clearly distinguished from this in that the purchaser had knowledge of the facts relied upon to defeat the tax judgment, and in this case there is neither allegation nor proof of such fact. But there is much said in that opinion which has never been approved by this court from the day it was written, and in Hampton v. McClanahan, 143 Mo. 501, Division One of this court practically placed a stamp of disapproval upon the broad language used by the writer of the opinion in the Harness case. In this Hampton case Division One of this court in effect concurred with the views of GANTT, P. J., of Division Two,

in his views expressed in the Harness case. If the views of SHERWOOD, J., in the Harness case, have since been recognized by this court, such recognition has escaped my observation. In the very late case of Evarts v. Lumber and Mining Co., 193 Mo. 433, Division No. One again in effect disapproved of the views expressed by SHERWOOD, J., in the Harness case, supra, and again adopted the views of GANTT, P. J., that a tax judgment must stand upon the same basis as any other judgment of a court of record. Following several previous opinions we then said: "The rule in this State also is that a judgment in a tax suit cannot be collaterally attacked by one who was a defendant in that suit, and who was properly brought in by personal service or by publication, nor can the title of a purchaser under such a judgment be defeated by showing that the taxes, for which the judgment was rendered, had been paid before the institution of the suit, before the judgment was rendered, or before the sale under the judgment. [Hill v. Sherwood, 96 Mo. 125; Jones v. Driskill, 94 Mo. 190; Gibbs v. Southern, 116 Mo. 204.]"

This is certainly true in a case where it is not even charged that the purchaser under the tax judgment had any knowledge of fraud in the concoction of the judgment. There can be no valid reason assigned for a different rule for tax judgments. If a party is duly served with process in a tax proceeding, and fails to exercise diligence in making a proper defense, he is precluded by the judgment, although in fact there has been a payment of the debt and a discharge of the lien. Thus in the late case of Rankin v. Real Estate Co., 199 Mo. l. c. 350, we said:

"It is also further contended that at the time the tax proceeding was instituted, by an amendment of the statutes, the lien for city taxes was given to the city of Sedalia, and the suit could not be maintained in the name of the State for city taxes, and for that

reason the judgment is void. What has been said above as to appellant's first contention applies with equal force in reply to this second contention. If the suit was for city taxes, as in fact it was, then the defendant in the tax proceeding should have raised by proper plea the question of the right of the State to enforce the lien for city taxes. This was not done, and judgment followed. John Jones may not have a right to enforce a lien against my property, but if he brings suit so to do, and I, after being duly served with process, permit him to obtain a judgment enforcing the lien, I would be in no position to attack the judgment collaterally. This second contention is therefore ruled against the appellant, without however expressing any opinion upon the question as to whether or not suits for city taxes must be brought in the name of the city rather than in the name of the State. It is not necessary for the disposition of the case at bar to pass upon that point.''

These cases and others we may revert to later. At this time we only desire to emphasize the fact that in the trial below the plaintiff was proceeding, both by his petition and proof, to set aside this tax judgment upon the theory advanced in the Harness case, supra, and with no allegation of fraud in the concoction of the judgment. Having so proceeded below, such must be the theory of his case here. For the present it might be granted that plaintiff might be able to show fraud in the concoction of the judgment, and that defendant had knowledge thereof, and defeat the sheriff's deed, but such is not the theory of the petition, nor the course of trial *nisi*. For this error the case will at least have to be reversed and remanded to the end that plaintiff by proper petition and proof may bring himself within the recognized rule in this State. If he desires to plead fraud in the concoction of the judgment and that defendant had knowledge of such fraud he may do so.

II. In another respect the position taken here is contra to the theory of the trial below. Nowhere in the petition is the question of fraud mentioned in connection with the question of inadequacy of price. As to Bacon the most that is charged is that he bought land for $12.50 which was worth $1000. No fraud, collusion or other wrong circumstance is either pleaded or proven. The case was not tried even upon the theory that inadequacy of price was a material element. When the question of the value of the land first came up, the trial court promptly ruled that under the petition such question was not in the case. It is true later one witness was permitted to state the value of the land "subject to the objection," but the record shows that such objection was never passed upon by the court, and further shows that defendant offered no evidence upon the question of inadequacy of price. It is clear to our mind that the defendant was relying upon the first ruling of the court as to such evidence being incompetent under the pleadings. The judgment and findings of fact in the judgment make prominent the fact that the price paid "was grossly inadequate." The judgment then proceeds to first declare the tax judgment void, and then the deed made thereafter void. The question of inadequacy of price was never tried out in the court below. Counsel claim in the briefs that they can show that such alleged inadequacy of price was not such as should affect the sale, and that they could have so shown but for the action of the court. We are of opinion that the trial of this issue, under this record, was precluded by the action of the court, and if it were to be made a determining question in the case, as it was, it should have been tried out on the facts. We think that a trial of this issue was precluded by the conduct of the trial court, and a judgment largely, or partly, founded upon such issue should not be permitted to stand until the issue is tried out upon the facts. Especially is this true where

the petition does not in plain terms count upon inadequacy of price as a ground to set aside the sale. As stated before, this petition when properly digested, proceeds upon the theory of the Harness case, supra, which case this court has never since followed. The pleader clearly proceeded upon the theory that the payment of the taxes discharged the State's lien, and rendered the judgment void, and not upon the theory that inadequacy of price was superinduced by the conduct of any person connected with the case. On the idea that this question was in the case, the cause should be reversed and remanded to the end that such question can be tried upon proper evidence. Here again we are asked to affirm a judgment upon a theory of the case not adopted *nisi*. This we have continually refused to do. [Shelton v. Franklin, 224 Mo. 342.]

III. If the case is to be retried another bit of evidence deserves some consideration at the hands of the chancellor. Daniel Cochran was a witness *in behalf of the plaintiff*. His testimony strongly tends to indicate that the plaintiff knew that this land was advertised for sale under a tax judgment. The testimony is not as clear as it might be, but no effort was specially made to develop the point. As we have indicated, the theory of plaintiff seems to have been that when he had shown a payment of taxes prior to the judgment, that of itself voided the judgment, and no further proof or pleading was necessary. This theory is erroneous. So that if upon retrial it should develop, that the evidence, as Cochran's testimony (fragmentary and incomplete as it is) tends to show, shows that plaintiff in fact knew that the land was advertised for sale under what he (plaintiff) claimed was a voidable judgment, and plaintiff with that knowledge stood aloof and gave no notice to protect purchasers under such judgment, there would be no doubt that plaintiff would be estopped from undertaking to attack a title that he thus permitted to pass. At least it would be a serious

matter for consideration in a fair disposition of the case. There is nothing in the present record to show that defendant had knowledge such as to place him upon inquiry, as in the case of Zweigart v. Reed, 221 Mo. 33.]

If therefore the evidence should turn out that Mangold, following the idea of his petition, to the effect above stated, had actual knowledge that his land was being sold under such alleged voidable judgment, and stood by and permitted one with no knowledge of the things *dehors* the record which made the judgment void, he would have but little standing in a court of conscience. It is not exactly clear what is meant by the witness Cochran, whose testimony we have copied practically at length. We gather from it the idea that he and Mangold both knew the property was advertised for sale, but that he (Cochran) refused to bid, because Mangold had told him that the taxes had been paid. This theory of the evidence is corroborated by the petition of the plaintiff.

For the reasons (1) that the petition is not framed upon the proper theory, and (2) that the theory pressed here to sustain the cause below is totally different from that adopted below, we feel that the cause should be at least reversed and remanded. To this end we have made the suggestion in this paragraph. Other questions involved we take up next.

IV. Passing for the moment the question of the sufficiency of the petition as a bill directly attacking the judgment upon the fact of fraud in the concoction of the judgment, and granting it to be true that a charge of inadequacy of price was properly made by the petition and sustained by the proof, yet what further facts have we which would authorize us to set aside this sale? Mere inadequacy of price alone will not do so under a long line of cases in this State. Tax sales, under tax judgments, are not different from other judicial sales. We have at last reached a

period in Missouri jurisprudence where a tax sale, under the present statutes, has the same status as other execution sales.

As to judicial sales in the early case of Hammond v. Scott, 12 Mo. l. c. 11, this court said: "We do not subscribe to the principle contended for by the complainant's counsel, that inadequacy of price alone is sufficient ground for setting aside a sheriff's sale. On the contrary, where the sale has been an open, fair and public one, where there has been no act done or superinduced by the sheriff or purchaser to prevent the property from selling for a higher price, public policy would indicate that such sales, although attended with great pecuniary loss, ought to be upheld and sustained. If the principle was recognized, its application would be entirely arbitrary, as no rule could be established to govern the innumerable cases that arise."

So also in Nelson v. Brown, 23 Mo. l. c. 21, wherein a sale was set aside because of irregularities known to the purchaser, we reannounced the same doctrine: "There is no innocent purchaser here. The plaintiff in the execution becomes the purchaser at the sale for his own benefit; is present and privy to all that transpires. Under such circumstances, he is a purchaser with notice in fact, and is affected by the irregularities which occurred. We do not maintain that mere inadequacy of price is sufficient to set aside a sheriff's sale. But where there is a gross inadequacy of price, courts will require that there be a strict regularity in the proceedings. The irregularities attending the sale in question were such that it must be set aside."

In the case at bar no irregularity is charged or proven as against Bacon or the officers making the sale. No charge is made except as to the method of procuring the judgment and that question we take up later.

In the case of Meir v. Zelle, 31 Mo. l. c. 332, we said: "The sale appears to have been conducted fairly and properly in all respects, and mere inadequacy of price is no ground for setting it aside where this is the case." In this case the price paid was less than ten per cent of the value of the property.

Our court has consistently followed the doctrine of these early cases. See the following: Walker v. Mills, 210 Mo. 684; Derby v. Donahoe, 208 Mo. 706; Welch v. Mann, 193 Mo. 327; State ex rel. v. Elliott, 114 Mo. App. 562; Martin v. Castle, 193 Mo. 183; Cubbage v. Franklin, 62 Mo. 364; Wagner v. Phillips, 51 Mo. 117; Hammond v. Scott, 12 Mo. 8; Gordon v. O'Neil, 96 Mo. 350; Briant v. Jackson, 99 Mo. 585; Cobb v. Day, 106 Mo. 278; Phillips v. Stewart, 59 Mo. 491; Walters v. Hermann, 99 Mo. 529; Landrum v. Bank, 63 Mo. 48; Holden v. Vaughan, 64 Mo. 590; Railroad v. Brown, 43 Mo. 297.

This court has never subscribed to the doctrine that mere inadequacy of price alone would vitiate an execution sale. We have been particular to closely scan the record for irregularities and for fraudulent conduct upon the part of the officers and the bidders, but in no instance have we set aside a sale for mere inadequacy of price. There may be and perhaps there are courts following such rule, but it is a dangerous one. Too many things enter into a sheriff's sale under execution for a court to undertake to determine what, under each peculiar case, would be an adequate price. Courts should see that their sales are conducted fairly, and inadequacy of price may be a circumstance tending to show that they were not so made. However, this court has never gone to the extent of holding that mere inadequacy of price alone should obviate an execution sale. Nor do I think we should go so far. Further, I do not think there should be any difference between tax executions and other executions. If the sale is fairly conducted the result

should be the same in each. If there should be any difference, it should be in favor of the State trying to collect taxes for governmental purposes, but in law there can be no good reason assigned for a difference. Defendants served in tax proceedings should stand just where defendants in other law suits stand. Sales under tax judgments should stand just where other judicial sales stand. The State should stand, in the collection of its tax debts, just where other litigants stand. The conduct of its agents should not affect judgments where the conduct of other litigants would not affect them. Nor should the conduct of its agents as to sales affect sales more than the conduct of other litigants and their agents. Leaving out the question of the alleged fraud in the concoction of the judgment there is not a thing charged or proven to authorize the setting aside of this tax sale. The matter of fraud in the judgment, and defendant's relation thereto, we take next.

V. It has been suggested in Division that the petition charges fraud in the concoction of the judgment. To this we do not agree, as indicated in the first paragraphs of this opinion. We concede that facts may be alleged from which a charge of legal or actual fraud may be inferred, but the fraud specifically charged or to be inferred must be as to the defendant in the suit. In the case at bar the petition totally fails to charge a fraud, legal or otherwise, as against the defendant Bacon. It does not even allege that Bacon had any knowledge of the fact that taxes had been paid prior to the judgment under which he bought. The regularity of that judgment upon its face is not questioned. It is only by facts *dehors* the record that such judgment could be impeached.

These facts plaintiff knew and defendant did not know so far as the record now shows. Plaintiff by an uplift of a hand could have prevented a judgment.

Plaintiff could have by a sound of his voice, according to one of his own witnesses, warned defendant of the hidden dangers in the judgment under which he bought. But be this as it may, the plaintiff has not seen fit to charge defendant with knowledge of things which would render a sale to him void under the judgment for taxes before us. Of all things patent defendant must take notice, but all things not patent the petition should charge, and the proof show knowledge thereof. [Shelton v. Franklin, 224 Mo. 342.] As to whether Bacon had any knowledge of the alleged irregularities in this judgment and sale, neither the petition nor the proof shows. The petition does not so charge nor does the proof so show. The record before us would tend to show that Bacon bought without knowledge of the facts *dehors* the record that would tend to vitiate the judgment. Plaintiff did not see fit to plant his case below upon this theory. Whether he can show such knowledge upon the part of Bacon, we do not know. At this time it appears that plaintiff was resting upon some of the broad language in the Harness case, which the court has ever since disapproved. We would be justified in reversing the case outright, under Evarts v. Lumber Co., 193 Mo. 452, and the cases therein cited, but in view of the fact that plaintiff may be able to plead and prove such knowledge upon the part of the defendant as would preclude him from the fruits of his purchase, we think the safer plan is to reverse and remand the case. Following the recent Shelton case, supra, the petition should allege, and the proof show, some knowledge on the part of Bacon that there was fraud in the concoction of the judgment or that there was some inadequacy of price coupled with other facts tending to show collusion or fraud in the sale. These facts do not so appear in pleading nor proof, and may never so appear, but as we are impressed with the idea that a wrong theory as to pleading was

adopted by plaintiff, the safer plan is to reverse and remand the case. The opinion in Evarts v. Lumber Co., 193 Mo. 452, and the cases prior thereto and cited therein, would really require an absolute reversal of the case. Following the safer plan, let the judgment be reversed and the cause remanded, to be further proceeded with in accordance with the views in this opinion expressed. *Fox, C. J., Gantt* and *Burgess, JJ.,* concur; *Lamm, J.,* dissents in separate opinion, in which *Valliant* and *Woodson, JJ.,* concur.

## DISSENTING OPINION.

LAMM, J.—I vote to affirm the decree, therefore dissent from the views of the majority of the court, speaking through my learned brother GRAVES. This because:

Mangold sues Bacon in equity to set aside a tax judgment and tax deed affecting the southeast quarter of the southwest quarter of section 2, township 23, range 5. A decree going in his favor, Bacon appeals.

The bill alleges, the proof shows and the chancellor finds, the land worth $1,000; that at a certain time Mangold (then owning it) sells to Hogan and wife; that the Hogans (paying $100 cash in hand) executed a deed of trust for the balance of the purchase money, $800; that both conveyances go of record; that with title in this fix, Souders, collector, sues in the name of the State to enforce a lien for back taxes for the years 1900 and 1901, aggregating $14.99 in taxes, penalties, collector's commission and county clerk's costs. In this tax suit the Hogans and Mangold are parties defendant with one Cochran, one Foster and one Pennington. The trustee in the deed of trust is "the acting sheriff of the county of Butler," and he was not a party defendant. Why Cochran, Foster and Pennington were made parties does not appear. After lurking in the clerk's office for over a

year a summons is sued out in the tax suit, and, on the 19th of November, 1903, is served on all the defendants save the Hogans. Although Pennington had not a particle of interest in the real estate, as we can see, he is served with a copy of the writ and petition—the others, including Mangold, are each served with a copy of the writ only. Mangold, being the principal party in interest and living some distance away, opens correspondence with the collector *instanter* to ascertain the amount due. The collector, as in duty bound, sends him the amount by mail and on the 26th day of December, 1903, Mangold pays all demanded, *viz.*, taxes, penalties, county clerk's costs and collector's commissions for both years in suit. These payments are duly entered as of that date on the proper tax books and records in the collector's office and receipts issued to Mangold. In spite of such payment, and afterwards, the Hogans are summoned in the tax suit. Afterwards the suit by an omnibus order is continued at the February term, 1904. Afterwards, at the June term, judgment by default goes foreclosing the State's lien for the taxes and directing a special *fi. fa.* Afterwards, on August 29th, such execution issues. After a levy on August 31st, the land is knocked off on the 6th of October, 1904, to Bacon, on his bid of $12.50 on said date, and a sheriff's deed is executed, duly acknowledged on the 7th and spread of record on the 8th of the same month. Said bid, *insufficient to pay any tax,* is credited on the costs, as far as it goes, and falls short.

Shortly after Mangold paid the tax he takes a deed from the Hogans to himself, presumably in consideration of a release of the trust deed. The narrations of tax petition, judgment, execution and sheriff's deed are conventional and need no further mention.

Supplementing his documentary proof, plaintiff took the stand on his own behalf, testifying that he lived at a town called Harviell in Butler county; that

after he paid the taxes he thought no more about the suit; did not remember whether he had been served with summons at the time of payment; understood the taxes were not paid and took up the matter in a correspondence with the collector and paid them as shown by the tax books and receipts offered in evidence; and knew nothing of the sale until all was over and then learned of it from his co-defendant, Cochran.

Cochran was put on the stand by plaintiff and testified he once owned the land, was one of the defendants in the tax suit, knew of the advertisement but paid no attention to it because Mangold had told him that he (Mangold) had paid the taxes. As he no longer owned the land, it is not clear why he had a call to interest himself.

Having refused testimony from Mangold that the land was worth $1000 at the sale, the court finally turned about and permitted Cochran to testify it was worth that sum. There is no contradiction of the value. In fact defendant introduced no oral testimony whatever, contenting himself with introducing the clerk's minute book showing the tax suit was continued from the February to the June term, 1904.

In a finding of facts below, it appears, *inter alia*, that Mangold made due inquiry of the collector on ——day of November, 1903, by letter as to the amount due, that the collector in reply on the —— day of December, 1903, sent a statement to him showing the full amount of taxes, penalties, fees and costs for the years in suit, and that Mangold on the 26th of December, 1903, paid the amount claimed by the statement, received tax receipts therefor and the tax books were then marked "paid in full." Further that the land was worth at the time of the sale $1000, and that the price bid by Bacon was grossly inadequate; that Mangold relied on the payment of the said taxes as extinguishing the State's lien and paid no further attention to the suit; that the collector, without further notice

to him or the other defendants, prosecuted the suit to judgment in June following and, without the knowledge of Mangold, caused execution to issue and be levied on the land, followed by advertisement, sale and deed to Bacon for $12.50.

On a record thus outlined, can plaintiff's decree stand?

I. The bill attacking and the decree annulling not only the deed but the tax judgment itself, counsel insist here that the proper parties were not before the court to permit that particular form of relief. True, the tax collector, to whose use the tax suit was prosecuted, is not a party nor are Pennington, Cochran or the Hogans. But there was no timely demurrer or objection below by answer to the non-joinder of these parties. · Under such circumstances the objection is waived. Besides that, the State was the principal party to the tax suit. It could not be made a party to the bill. The sovereign cannot be sued without statutory leave. It was proper to bring in the purchaser. [Bagley v. Furnace Co., 120 Mo. 248.]

Moreover, the point does not go to the merits. This, because Bacon and Mangold are the only persons whose rights are now held in judgment. Cochran, Pennington and the Hogans have no pecuniary interest of the value of a single groat in the subject-matter of the tax judgment or land. Neither is any right of theirs, however shadowy, in anywise affected. The State had, in fact, received its taxes and no one is authorized to say in its behalf that it asks more than one payment. In fine, the sole purpose of sustaining the judgment is to serve as a prop to Bacon's deed, and he, in his own person, is in court to maintain that prop. One other thing is apparent, viz., if his deed fail, the mere prop to the deed serves no office to him. So far as his individual rights go, the antecedent steps leading up to the deed are merged into the deed itself for

all practical purposes of administering justice in this case.

II.   As I read this record, the main propositions to be ruled are:

Does the payment of taxes after suit brought, and before judgment, under the circumstances of this case, make the judgment void or voidable on direct attack?

Or, if not, is the bid so grossly inadequate as to (without more) avoid the sale and destroy the deed in a direct proceeding such as this?   And herein of the sufficiency of the bill.

Or, if not, are there such elements of surprise, mistake or other equities involved as, taken with the inadequacy of consideration, sustain the decree setting aside the decree and deed?

Attending to them, we observe:

(a).   Mangold, personally served with summons, paid up, but made no defense to the suit.   A judgment followed.   By that judgment, barring fraud in its concoction, the question of the taxes having been properly assessed, levied and returned delinquent, the question of tax remaining unpaid at the date of the judgment, that the State held a lien on the real estate therefor, and that such lien was foreclosed, each is *transit in rem judicatam* and no longer open.   It is trite learning that, after the term, a judgment of a court of competent jurisdiction rendered within the lines of the pleadings, on proper service and not appealed from, cannot be set aside except on the foot of fraud in its very concoction.   Its body, like Achilles', is invulnerable except at one point.   The bill in this case does not allege fraud in so many words.   Fraud being a conclusion deduced from substantive facts, the better rule is that the facts constituting the fraud should be pleaded, where relief is predicated of that head.   An allegation of fraud by that name, without more, is not good pleading.   So, averments of fact which are not

sufficient to constitue fraud do not state a cause of action for fraud and deceit though the epithet of "fraudulent" is attached. On the other hand, allegations of fact, which, taken together constitute fraud, also constitute a good cause of action for fraud without an allegation of fraud *eo nomine.* Though, if the facts warrant the epithet, it is usual to apply the epithet. The petition in the case at bar is scanty in allegation and inartificially drawn, but there are enough facts alleged and proved to show fraud in the concoction of the judgment.

In Clyce v. Anderson, 49 Mo. 37, it was held that the fraud which would avoid a judgment need not be positive and actual with the intent to cheat and wrong those interested, but it might consist in any improper act or concealment which operates as a fraud and results in loss, whatever the motive. That case has been frequently cited and steadily followed.

In Bresnehan v. Price, 57 Mo. 422, Bresnehan was overreached in this way: He agreed to an arbitration in a suit pending. The case was then continued. When the day fixed for the arbitration came he was sick and continued sick for about a week. He sent word to the other party, but there is no evidence the word was received. When the day came to which the case was continued, judgment was taken against him. Subsequently, he found out about the judgment, but it was then too late to appeal. WAGNER, J., in deciding the case, among other things, said: "When the agreement to settle the matters in dispute was made, he unquestionably supposed that the legal proceedings were at an end, and had a right so to suppose from the circumstances. . . . Nothing is better settled than that where, by mistake or fraud, a party has gained an unfair advantage in proceedings in courts of law, which must operate to make that court an instrument of injustice, courts of equity will interfere and re-

strain him from reaping the fruits of the advantage thus improperly gained."

In Wonderly v. Lafayette County, 150 Mo. 635, the scheme shown to exist was denounced in this language: "The scheme was a fraud on the court whose jurisdiction was betrayed, and a fraud on the defendant who was tricked out of its defense." It was ruled in that case that the cunningness which perverted the administration of justice by tricking the court into the belief that it had jurisdiction to render the judgment when in fact it had none would be sufficient to set the judgment aside.

In Lee v. Harmon, 84 Mo. App. 157, it appeared that Harmon had sued Lee by attachment, that in undertaking to levy the writ Harmon and Lee struck a bargain. Lee conveyed him a piece of land in settlement of the balance due on their claims and counterclaims and Harmon agreed to dismiss the suit and pay the costs. This he failed to do but took judgment. Such facts in equity were adjudged sufficient to set Harmon's judgment aside because the circuit court has been made "the instrument of his injustice."

In a late case, Howard v. Scott, 225 Mo. 685, the jurisdiction of the Federal court in bankruptcy had been betrayed by concealments and the jurisdiction of the State court was betrayed by concealing the fact that when the suit was brought the subject-matter was within the jurisdiction of the Federal court in the bankruptcy proceedings. It was ruled that the judgment was a fraud upon the jurisdiction of both courts and could not stand.

When the taxes were paid the State's lien was exhausted and could not thereafter be foreclosed. [Thompson v. Elevator Co., 77 Mo. 520.] Those officers to whom the costs were due had no *locus standi* to control, thwart or prevent the settlement made by the collector. [Hoover v. Railroad, 115 Mo. l. c. 81 *et seq.*] We have held that where taxes were paid and

judgment thereafter was rendered for them, if the receipts be presented to the collector before the sale and he had entered satisfaction on the back tax books and had agreed to satisfy the judgment and to direct the tax attorney to proceed no further, if, in violation of that agreement and unknown to the owner, a sale be made, the sale is void. [Huber v. Pickler, 94 Mo. 382.] Under our former system of tax laws payment prior to sale was a complete defense. Even under our present system it has been said that payment of taxes prior to judgment is a defense to actions arising on tax deeds. [Harness v. Cravens, 126 Mo. 233; and see, *arguendo,* City of Aurora v. Lindsay, 146 Mo. 509; Hoge v. Hubb, 94 Mo. 502-3.] It has, however, been ruled that a tax judgment under our present tax laws stands like any other rendered on due service in a court of competent jurisdiction and that it is not subject to be ripped up by mere proof that the cause of action has been extinguished by prior payment of the taxes. This is certainly true in a collateral attack. [Jones v. Driskill, 94 Mo. 190; Gibbs v. Southern, 116 Mo. 204; Hill v. Sherwood, 96 Mo. 125.] And Division One has held in a suit to quiet title under section 650, where a direct attack was made on a tax deed for the reason the taxes were paid prior to judgment, that fact could not be shown to defeat the title of an *innocent* purchaser at the tax sale. [Evarts v. Lumber and Mining Co., 193 Mo. 433; Wood v. Smith, 193 Mo. 489.] But the facts in judgment in the line of cases just cited differ from the facts here. In those cases payment was made before the suit. In this case payment was after suit. Here the collector, having sued in the name of the State, in the name of the State received payment. Does such a case as that not stand on a different foot than where, through inadvertence, the taxes, though paid, were not marked paid and afterwards suit was brought? In the latter case the taxpayer has notice of the mistake in the books and

that he must defend a tax suit. In the case at bar he does defend by paying at the only place where payment can be made, *viz.*, to the bonded officer who alone can receive taxes. When such officer in the name of the State collects all he demands and receipts for it, marks the taxes on the books as paid and leaves the citizen go without more, is there not an implied term read into that arrangement to the effect that the citizen need pay no more attention to the lawsuit? That the collector will look after it? I think so. Must a citizen hire an attorney in such pickle and defend in court? The King can do no wrong. What a King cannot do, the *State* cannot do. And when the collector conceals that state of things from the court and takes a judgment in dishonor of the State is it not an extrinsic and collateral matter constituting a fraud upon the court regardless of the motives of the collector?

If Bacon had knowledge of the payment of the taxes clearly he would not be an innocent purchaser and the judgment and tax deed would not protect him. [Murphy v. Smith, 86 Mo. 333; Hampton v. McClanahan, 143 Mo. 501.] Now in this case, while there is no proof that Bacon knew the taxes were paid, yet we do not think him an innocent purchaser and this because of the inadequacy of consideration, and other facts to be presently mentioned.

(b). The yoke of taxation being onerous and the taxing power proceeding *in invitum* (willy nilly and against the grain) courts, as the cases show, while holding that taxes are the very life blood of the State, have not been slow to seek out ways of protecting the citizen against tax sales where there is present the double yoke of enforcing two payments, provided such protection can be given without breaking the tender vessels of the law bull-in-the-china-shop fashion.

(c). Inadequacy of consideration. The law on that question adjusts itself to meet the varying phases of litigation, each case calling for its own degree of

proof. For example, the question might arise on specific performance, or on a motion to set aside a judicial sale, or on objection to the approval of a report of sale, or on a contract executed or executory between parties *sui juris* who dealt with each other at arm's length and agreed on a consideration, or on a contract where one of the parties was unlettered and ignorant, or where a fiduciary relation existed, or where a gift was involved, or where the title was bad, and so on. This case involves the question of inadequacy of consideration in a judicial sale and deed following, when the title is clear and the judgment defendant is under no disability. The pleadings and decree fairly involving that question, it has received consideration at the hands of learned counsel on both sides —the one contending the consideration is so grossly inadequate as to shock the conscience and avoid the sale and deed; the other that inadequacy of consideration is no ground for equitable relief. It is said the issue is not properly raised on the pleadings, but we do not read them that way. It is said such was not plaintiff's theory below. But the court's finding shows it was a trial theory and as the bill alleged facts showing inadequacy, such finding is responsive thereto. That is sufficient.

For obvious reasons courts write with extreme caution on this head. To illustrate: Let us suppose that a title, unincumbered and free from defects, to one thousand acres of land worth $25 per acre, pass under a sale for one cent an acre without the knowledge or consent of the judgment defendant, and that thereupon the judgment defendant goes into equity for relief against the purchaser for that reason alone —will the chancellor hear him? We think no carefully guarded formulation of the law will deny relief in the flagrant instance put. On the other hand it would be folly to rule that a purchaser at a judicial sale would have to pay anything like full value before he could

sustain his deed. And we should by no means rule that a purchaser at a tax sale acquires a voidable or a void title by bidding merely the taxes and costs, or (under exceptional circumstances) even less. It must be borne in mind that the prime object of tax sales is to collect taxes. A tax sale that misses taxes is a *non sequitur*. The State is vitally interested in such collection and the purchaser who bids the taxes due performs the duty of the citizen refusing to pay. In this case, however, the citizen had in fact paid the taxes. So, too, if we assume the taxes were adjudged unpaid and that, after judgment, the question of payment being no longer open, the taxes must be taken as due, then the case proceeds on the theory that this particular defendant paid none. His bid fell short of the costs and, peradventure, the whole proceeding may result merely in learned counsel for defendant *saving their Bacon*. Witness: plaintiff stands to lose his land; the State stands to lose its taxes; but Bacon stands to win a thousand dollar farm. (Behold, the judicial mountain labored and brought forth a ridiculous mouse! Even as in the days of Horace and Phaedrus we are told other mountains did.) No public policy we know of is subserved by sustaining such tax sale as that. It may be said there is no precedent for such ruling. Be it so. But if there be none it is time to make one.

Inadequacy of consideration has been held not a distinct head of equitable relief. In many cases the doctrine is so formulated. But that is a generalization with exceptions in a pinch. Speaking to the point, Lord High Chancellor THURLOW says (Gwynne v. Heaton, 1 Brown's Chan. Rep. l. c. 7, Perkins' Ed.): "To set aside a conveyance, there must be an inequality so strong, gross, and manifest, that it must be impossible to state it to a man of common sense, without producing an exclamation at the inequality of it." That dictum, unsatisfactory and general as it is (for

the learned chancellor deferred to the authority of other cases establishing a rule of property and spoke of the principle as "loose"), has been quite generally accepted as the measure of the equitable rule granting relief on inadequacy of consideration. It was quoted with approval by EWING, J., in Morriso v. Philliber, 30 Mo. 1. c. 148; by Pomeroy (2 Pom. Eq. Jur. [3 Ed.], note to sec. 927); by Bispham (Bisp. Eq. [7 Ed.], p. 330, sec. 219). The cases are indeed rare where mere inadequacy of consideration has avoided a deed. But as I read the law courts of equity refuse to renounce the right to avoid such deed for inadequacy of consideration so palpably and manifestly gross as to shock the conscience. When the conscience of the chancellor is shocked, his ear opens and his arm stretches forth. It may be admitted that chancellors (hesitating and doubting) have shown marked industry and ingenuity in being swift to lay hold of small circumstances and minor equities to supplement inadequacy of consideration. But that inadequacy of consideration of the extreme character indicated may in *some* cases be a distinct ground of equitable relief, where no other can be laid hold of, I think is sound and wholesome doctrine. [Morriso v. Philliber, supra; Hanson v. Neal, 215 Mo. 1. c. 275; Guinan v. Donnell, 201 Mo. 1. c. 202; Cobb v. Day, 106 Mo. 1. c. 300 *et seq.*; Walters v. Hermann, 99 Mo. 532; Knoop v. Kelsey, 121 Mo. 1. c. 649; Davis v. McCann, 143 Mo. 177; Bispham's Eq., supra, p. 330; 1 Story's Eq. (13 Ed.), sec. 245, 246; Pomeroy's Eq., sec. 927, supra; Osgood v. Franklin, 2 Johns. Chan. 1. c. 24; Graffam v. Burgess, 117 U. S. 1. c. 192 *et seq.*; Schroeder v. Young, 161 U. S. 334; Stephens v. Ozbourne, 107 Tenn. 572; Holdsworth v. Shannon, 113 Mo. 1. c. 520 *et seq.*]

That the inadequacy of consideration upon which relief is grounded must be so gross as to indicate fraud, as generally held, is but another way of stating the rule put by THURLOW in the Gwynne case. This is

so because a thing equivalent to, or demonstrating, fraud, as, for instance, utter unconscionableness in a bid at a judicial sale, may be to all intents and purposes fraud itself. (See authorities, supra.) That inadequacy of consideration is treated under the head of fraud in standard works of equity and well-considered cases, but illustrates a natural disposition to classify and to gently crowd every cause of action under one or the other head of the classification adopted.

It is a hornbook proposition that under given conditions courts treat inadequacy of consideration as a badge of fraud when they are in its pursuit; and when a thousand-dollar farm is levied upon by the State for the sole purpose of paying taxes against it and passes to a stranger at a tax sale for a bagatelle too small to even pay a few dollars costs, leaving the sovereign State to whose use the taxes were levied, the lien enforced and the sale made "to hold the sack" (if we may use a snipe-hunting simile), what is it, if not an arrant fraud — a trick on the State and a trick on the landowner? In common honesty, looking to the good sense of the thing, what *innocence* can be in such a purchaser? Does he not hold a tainted title subject to be set aside either at the instance of the State whose revenues are defrauded or at the instance of the landowner whose property was taken by solemn mummery? Now, what is equity to do with such a situation? Is its arm too short to reach it or too weak to deal with it? Will a court search it out, find it, see its iniquity, and then (O! most lame and impotent conclusion!) leave it be, refuse to meddle with it? Give no remedy? If such be the law, then, I submit, the law writes itself down, as Dogberry wanted to be, *viz.*—but no matter about that. The all-in-all of the law is to provide a remedy for wrongs when found, not to weakly turn its face to the wall. Otherwise, our faith in the law is vain. I know of no

Mangold v. Bacon.

authority or reasoning leading up to such absurd con-
clusion unless it be the droll reasoning of the immortal
street lecture on official duties delivered by said Dog-
berry, four hundred years gone, to the police of
Messina. What says the learned reporter anent this
lecture in the form of suggestion, question and an-
swer? We copy to illustrate the let-alone theory, *viz*:

*Dogberry.* . . . This is your charge; you shall comprehend
all vagrom men; you are to bid any man stand, in the prince's name.

2 *Watch.* How if a' will not stand?

*Dogberry.* Why, then, take no note of him, but let him go; and
presently call the rest of the watch together, and thank God you are
rid of a knave.

*Verges.* If he will not stand when he is bidden, he is none of
the prince's subjects.

*Dogberry.* True, and they are to meddle with none but the
prince's subjects. . . . Well, you are to call at all the ale-houses,
and bid those that are drunk get them to bed.

*Watch.* How if they will not?

*Dogberry.* Why, then, let them alone till they are sober; if
they make you not then the better answer, you may say they are
not the men you took them for.

*Watch.* Well, sir.

*Dogberry.* If you meet a thief, you may suspect him, by virtue
of your office, to be no true man; and, for such kind of men, the less
you meddle or make with them, why, the more is for your honesty.

*Watch.* If we know him to be a thief, shall we not lay hands
on him?

*Dogberry.* Truly, by your office, you may; but I think they that
touch pitch will be defiled; the most peaceable way for you, if you
do take a thief, is to let him show himself what he is, and steal
out of your company. . . . This is the end of the charge:—you,
constable, are to present the prince's own person; if you meet the
prince in the night, you may stay him.

*Verges.* Nay, by'r lady, that I think a' cannot.

*Dogberry.* Five shillings to one on't, with any man that knows
the statutes, he may stay him: marry, not without the prince be
willing; for, indeed, the watch ought to offend no man; and it is
an offense to stay a man against his will. (*Vide, Much Ado About
Nothing—Act* 3, *Sc.* 3).

If there was no other way out of it, we should toe
the mark and hold that the inadequacy of considera-
tion in this case was so gross and manifest as to shock

the moral sense, turn right and wrong topsy turvy, make mere opera bouffe of justice, and avoid the deed so long as title stands in the purchaser at the sale. If there was an innocent subvendee other questions would arise.

(c). But fortunately the case need not stand alone on such foot. There are other equities which, taken with the inadequacy of the bid, make a clear case for plaintiff. For example, the fact that no tax was paid by the bid, that plaintiff paid the tax after suit, was lulled to sleep by the conduct of the collector, that when the collector went on despite the payment no actual notice was given him of the intention to go on or of the judgment, execution, or intended sale, so that he might protect himself, all of which (involving duties due from those officers having the honor of the sovereign state in keeping) operated by way of surprise and mistake and support the decree.

The decree should be affirmed. *Valliant* and *Woodson, JJ.*, concur in these views.