JOHN MANGOLD, Appellant, v. ERNEST BACON.

**In Banc, November 27, 1911.***

1. **PLEADING: Suit to Set Aside Tax Sale: Cause of Action.** A petition alleging that after suit was brought for back taxes and service of summons, plaintiff (the owner) paid the taxes to the collector and received a receipt therefor, and the same were entered paid on the tax book; that the sheriff, nevertheless, without plaintiff's knowledge prosecuted the suit to judgment by default, and, without plaintiff's knowledge, advertised the land for sale and sold it to defendant at "a shockingly and grossly inadequate price;" alleging, after setting out these and other facts which it is claimed go to show fraud, that "all the proceedings, after the payment of the taxes and the entry of payment on the tax book, are and were frauds upon the rights of plaintiff; and that defendant, at all times, had, or by the exercise of reasonable diligence could have had, actual and constructive notice and knowledge of all the facts pleaded in this petition," states a cause of action for cancelling the tax

*Note.—Decided June 7, 1911. Motion for Rehearing filed. *Per Curiam* opinion on motion filed, original opinion confirmed and dissenting opinion, by GRAVES, J., filed, November 27, 1911.

deed—especially in view of the fact that, when the case was here on former appeal, it was held the petition did not charge fraud or inadequacy of price or that defendant had notice, and the case was remanded in order that those averments might be added. [GRAVES, J., dissenting.]

2. ———: ———: **Inadequacy of Bid: Shocking Conscience.** An allegation that the land was sold at "a shockingly and grossly inadequate price for said land" is in effect the same as averring that the land was sold at "a consideration so grossly inadequate as to shock the conscience."

3. **RULINGS ON FORMER APPEAL: Stare Decisis: Rule: Exceptions.** The general rule is that legal conclusions announced on a first appeal, whether on the general law or the law as applied to the concrete facts, become and remain the law of the case, not only upon a retrial, but upon a second appeal. But the rule is not without exceptions. Whether from grace or right, when cogent or convincing reasons appear, such as lack of harmony with other decisions and where no injustice or hardship will result from a change, or where by inadvertence principles of law have been incorrectly declared on the first appeal, or mistake of fact has been made, or injustice to the rights of parties would be done by adhering to the first opinion, the rule relaxes, and the court will re-examine and correct its own errors on the second appeal in the same case. The rulings in the former case are not strictly *res adjudicata*; it would be better to say they are "in the nature of *res adjudicata*."

4. **FRAUD: Securing Judgment After Taxes are Paid.** Plaintiff, the owner of forty acres of land, sold it to Hogan for $900, taking $100 in cash and $800 in notes secured by a deed of trust. Taxes, thereafter assessed, becoming delinquent, the collector sued plaintiff, who was personally served, Hogan and others. Living away from the county seat, plaintiff wrote to the collector to be informed of the amount of back taxes, penalties, fees and costs, and the collector having informed him that the sum was fifteen dollars, he sent him that sum, and the collector sent him a tax receipt and at the same time marked the tax book paid in full for the delinquent years. Thereafter the sheriff summoned Hogan, and made return of his writ showing personal service upon both defendants. Thereafter for a consideration of $800 Hogan conveyed the land to plaintiff, who relying on the fact that he had paid the taxes, penalties and costs and had thereby extinguished the tax lien, gave no further attention to the suit, and judgment went against him by default, without his knowledge.

The sheriff without his knowledge advertised the land for sale under the judgment and sold it to defendant for $12.50, though it was worth $1200. *Held*, that, to take a false judgment on behalf of the State for taxes so freshly paid and in the teeth of a transaction lulling the plaintiff into security, amounted to a fraud upon the State involving its honor, a fraud upon the court making it an instrument of injustice, and a fraud upon the plaintiff tricking him out of his rights; and the judgment, in a direct suit to set the same aside and to cancel the deed, brought against the purchaser alone, since the State cannot be sued and the collector is *functus officio*, will be avoided for fraud.

5. ———: ———: **Judgment for Costs.** When the State's lien for taxes is exhausted by the payment of the taxes, there is no lien to foreclose. Thereafter officers to whom costs are due cannot cut behind, prevent or control the settlement made by the collector, and have judgment to foreclose the discharged lien for taxes in order to get the incidental advantage of a · judgment for their costs or fees.

*Held*, by GRAVES, J., dissenting, that the State's lien is not discharged by the payment of the taxes alone. The statute (Sec. 11495, R. S. 1909), says that the State's lien for back taxes may be discharged by the payment of the taxes, ten per cent interest and the costs of making up the back tax books; but "if suit shall have been commenced against any person owing taxes on any tract of land, . . . for the collection of taxes due on the same, the person desiring to redeem any such tract . . . shall, in addition to the original tax and the interest and the costs, pay all necessary costs incurred in the court where the said suit is pending, together with attorney's fees;" and that means that the lien is not discharged, where suit is brought, until the court costs are paid.

*Held*, also, that plaintiff must be presumed to know the statute (Sec. 11505, R. S. 1909), which says the taxpayer "may pay the taxes, interest and costs, after the commencement of the suit, and before sale, . . . to the collector . . . and . . . to the clerk of the circuit court all costs thereon," and, since he knew the suit had been brought, his petition did not state a cause of action unless it contained an allegation that he had either paid these court costs himself or that the collector had agreed to see that the suit was dismissed.

6. **JUDICIAL SALE: Sheriff's Deed: Taxes: Tax Sale: Inadequacy of Consideration.** A court of equity, acting with caution and only in an aggravated case and when no aid from other equitable considerations is at hand, may set aside a sheriff's

deed on the sole ground of a consideration so grossly inade-
quate as to shock the conscience. Where land worth $1200,
in actual possession as a farm, in the absence of the owner
and with no actual notice to him, is sold under a tax sale for
$12.50—a sum insufficient to pay any taxes and scarcely suf-
ficient to pay a pittance of cost—the sale should be set aside
as to the purchaser without notice of the preceding fraud
culminating in the judgment.

*Held*, by GRAVES, J., dissenting, that if plaintiff knew the
land was advertised for sale under the judgment rendered
after the taxes had been paid, and with that knowledge
stood aloof and gave no notice to protect purchasers under
such judgment, and defendant was without notice of any of
the steps leading up to the judgment, the sale should not in
any event be set aside for inadequacy of consideration.

*Held*, also, that mere inadequacy of the price paid is not a
sufficient ground for setting aside a judicial sale, fairly and
openly made; and such a doctrine is not only new in
jurisprudence, but dangerous.

7. ———: ———: ———: ———: **Fraud.** That inadequacy of
consideration is usually treated, in decisions and text-books,
under the head of fraud, does not affect the rule that inade-
quacy of consideration may of itself amount to fraud, especially
when coupled with other inequitable features. Where the case
is so aggravated as to cry out loudly for relief and no other
ground can be laid hold of, then a consideration so grossly
inadequate as to shock the conscience is an all-sufficient ground
for setting the sale aside. [Overruling on this point Mangold
v. Bacon, 229 Mo. 459; GRAVES, J., dissenting.]

8. ———: ———: ———: **Fraud: Inadequacy of Price: Secs.
11495 and 11505, R. S. 1909.** Neither Sec. 11495 nor Sec. 11505,
R. S. 1909, goes to the question of the sufficiency of the peti-
tion to state a cause of action to have the tax judgment and
sale set aside on the ground of the fraud or of inadequacy of
consideration set forth in the opinion.

9. ———: **Taxes Paid Before Judgment: Suit to Set Aside:
Tender of Taxes Paid: Necessary Pleading: Secs. 11508 and
11509, R. S. 1909.** Where plaintiff paid the taxes after suit
was brought and before judgment, and especially where the
purchaser's bid was not sufficient to pay costs and the suit was
prosecuted to judgment only for costs, plaintiff, in his petition to
have the judgment and sale set aside, is not required to make
tender of these taxes; but he certainly meets the requirement
of the statutes (Secs. 11508 and 11509, R. S. 1909) by making
tender of the bid.

*Held*, by GRAVES, J., dissenting, that since the statute states that "no suit . . . shall hereafter be maintained . . . for the recovery of any lands which shall have been sold for taxes, or for the setting aside or cancellation of any tax deed or sale of land for taxes alleged to have been void or voidable, unless plaintiff shall in his petition offer to refund to the defendant therein . . . all taxes paid by such defendant, or other persons, and his grantors," a petition that does not contain an offer to return the taxes paid by defendant does not state a cause of action, and the point that it is defective in that respect can be raised at any time, even by a motion for a rehearing after a decision of this court holding that the petition does state a cause of action; and if no taxes have been paid, plaintiff, in order to meet the demand of the statute for that allegation, must allege that no taxes have been paid.

10. ———: ———: ———: ———: ———: **Taxes Paid After Sale.** There is no presumption that the purchaser at the tax sale has paid the taxes levied since his purchase; and the statutes (Secs. 11508 and 11509, R. S. 1909), requiring the plaintiff, seeking to have the tax judgment and sale set aside, to offer in his petition to refund defendant the taxes paid by him, with interest, applies only when taxes have actually been paid. But if taxes have been paid, plaintiff's petition should make tender, and defendant by his answer may pray a lien on the land for the taxes paid.

*Held*, by GRAVES, J., dissenting, that the petition must either contain an offer to refund the taxes paid, or an allegation that no taxes have been paid.

Appeal from Butler Circuit Court.—*Hon. J. C. Sheppard*, Judge.

REVERSED AND REMANDED (*with directions*).

*David W. Hill* for appellant.

(1) The payment of the taxes by appellant extinguished the State's lien and this being a direct proceeding to set aside the back tax judgment and back tax deed, the payment of the taxes and all other facts and circumstances in the case were properly pleaded. R. S. 1899, sec. 9266; Harness v. Cravens, 126 Mo. 233; Hampton v. McClanahan, 143 Mo. 501; City of

Aurora ex rel. v. Lindsay, 146 Mo. 509; Huber v. Pickler, 94 Mo. 387; Hoge v. Hubb, 94 Mo. 503; McClure v. Logan, 59 Mo. 234.    (2) It has been uniformly held by this court that when the price realized at a public judicial sale of real estate is so inadequate as to shock the moral sense and outrage the conscience, the courts will interfere to promote the ends of justice and on that ground alone set aside the sale.    Guinan v. Donnell, 201 Mo. 202; Yeaman v. Lepp, 167 Mo. 61; Davis v. McCann, 143 Mo. 172; Corrigan v. Schmidt, 126 Mo. 313; Knoop v. Kelsey, 121 Mo. 642; Gordon v. O'Neil, 96 Mo. 350; Holden v. Vaughan, 64 Mo. 598; Mitchell v. Jones, 50 Mo. 438; Railroad v. Brown, 43 Mo. 294; Byers v. Surget, 60 U. S. (19 How.) 311; State v. Elliott, 114 Mo. App. 566; 24 Cyc. 39; Lankford v. Jackson, 21 Ala. 650; Daly v. Ely, 51 N. J. Eq. 104; Banning v. Pendery, 7 Ohio Dec. 677; Hardin v. Smith, 49 Tex. 420; Sinnett v. Cralle, 4 W. Va. 600.    (3) R. S. 1899, sec. 9244, provides that a book of delinquent lands shall be kept by the collector, which was done in this case and the taxes entered paid on this book long before the sale, which was notice to the purchaser. (4) The respondent is not an innocent purchaser for value and without notice.    The law conclusively presumes that the respondent, as a purchaser at a public sale, had notice of all the facts pleaded by plaintiff, if the defendant does not affirmatively set up and prove the plea of "innocent purchaser for value and without notice."    There is no such plea or proof in this case.    Holdsworth v. Shannon, 113 Mo. 524; Young v. Schofield, 132 Mo. 650.    (5) Only a fee bill could have been issued against Mangold for the costs of the tax suit, which could not have served as an execution until after thirty days after demand, and the amount of the execution in this case was never demanded. R. S. 1899, sec. 3236.    (6) This is the second appeal.    Ordinarily the decision of the first appeal would settle the law of this case, but where there are clear and

cogent reasons for not following a former decision in the same case this court, on a second appeal, may overrule its decision on the first appeal, and we earnestly insist that the majority opinion of this court especially on the question of gross inadequacy of consideration being out of harmony with this court's former rulings and out of harmony with the United States Supreme Court and the weight of authority in the other states ought to be overruled for the very clear and cogent reasons as stated in the opinion of LAMM, J., in this case when it was before this court the first time. Citizens National Bank v. Donnell, 195 Mo. 564.

*James F. Green* and *Ernest A. Green* for respondent.

(1)  Plaintiff's petition wholly failed to state a cause of action and the trial court rightly so held. Mangold v. Bacon, 229 Mo. 459; Evarts v. Mo. Lumber & Mining Company, 193 Mo. 433; Hill v. Sherwood, 96 Mo. 190; Gibbs v. Southern, 116 Mo. 204; Newman v. Mercantile Trust Co., 189 Mo. 423; Martin v. Castle, 193 Mo. 183; Mallinckrodt Chemical Works v. Nemnich, 169 Mo. 388; State ex rel. v. Terminal Railroad Association, 182 Mo. 284; Smoot v. Judd, 184 Mo. 508; Schiffman v. Schmidt, 154 Mo. 204; Nagel v. Railroad, 167 Mo. 89; Walters v. Hermann, 99 Mo. 529; Sidway v. Missouri, etc., Co., 163 Mo. 342.  (2)  The trial court's judgment was rightfully for the defendant. The title of a purchaser under a judgment for back-taxes cannot be defeated by showing that the taxes for which the judgment was rendered had been paid before the judgment was rendered. A judgment in a tax suit cannot be collaterally attacked by one who is a defendant in that suit and who was properly brought in by personal service. Mangold v. Bacon, 229 Mo. 459; Evarts v. Mo. Lumber & Mining Co., 193 Mo. 433; Hill v. Sherwood, 96

Mo. 125; Jones v. Driskill, 94 Mo. 190; Gibbs v. South-
ern, 116 Mo. 204. (3) Inadequacy of consideration
alone is not a sufficient ground for setting aside a tax
sale. Tax sales under tax judgments are not differ-
ent from other judicial sales. Mangold v. Bacon, 229
Mo. 459; Walker v. Mills, 210 Mo. 684; Derby v. Don-
ahoe, 208 Mo. 706; Welch v. Mann, 139 Mo. 327; State
ex rel. v. Elliott, 114 Mo. App. 562; Martin v. Castel,
193 Mo. 183; Cubbage v. Franklin, 62 Mo. 364; Wag-
ner v. Phillips, 51 Mo. 117; Hammond v. Scott, 12 Mo.
8; Gordon v. O'Neil, 96 Mo. 350; Bryant v. Jackson,
99 Mo. 585; Cobb v. Day, 106 Mo. 278; Phillips v.
Stewart, 59 Mo. 491; Waters v. Herman, 99 Mo. 529;
Landrum v. Bank, 63 Mo. 48; Duncan v. Sanders, 43
Mo. 29; Holden v. Vaughn, 64 Mo. 590; Brown v. Rail-
road, 43 Mo. 297. (4) The opinion of this court on
the former appeal is the law of this case; that opinion
is *res adjudicata* as against appellant herein. Man-
gold v. Bacon, 229 Mo. 459; McGrew v. Railroad, 118
Mo. App. 379; Harburg v. Arnold, 87 Mo. App. 326;
Rigsby v. Oil Well Supply Co., 130 Mo. App. 128; Vier-
tel v. Viertel, 212 Mo. 562.

*James F. Green* and *Ernest A. Green* for respond-
ent on motion for rehearing.

(1) The decision rendered in said cause is in con-
flict with an express statute. R. S. 1909, sec. 11,508;
Laws 1903, p. 254. (2) The decision in said cause
is in conflict with two other express statutes. R. S.
1909, sec. 11,495 (R. S. 1899, sec. 9301); R. S. 1909,
sec. 11505 (R. S. 1899, sec. 9310). (3) The decision is
in conflict with a controlling decision by this court, to
which the attention of the court was not called through
the inadvertence of counsel for respondent. Haar-
stick v. Gabriel, 200 Mo., l. c. 245.

LAMM, J.—Equity—the relief sought being to set aside a judgment and cancel a tax deed.

Here once before, heard and submitted in Division and then in Banc, a judgment in Mangold's favor was reversed and the cause was remanded. [Mangold v. Bacon, 229 Mo. 459.] Below he amended his bill, and, on an attempt to introduce evidence, was met by an objection that his bill as amended did not state facts sufficient to constitute a cause of action. That objection was sustained. Saving his exception, he refused to plead over, elected to stand and suffered judgment, viz., that his bill be dismissed and that defendant recover costs. From that judgment, he appeals.

The pith of the bill will do for our purposes, viz.:

In 1902 Mangold owned forty acres of land in Butler county (the southeast quarter of the southwest quarter of section 2, township 23, range 5). In that year he sold and conveyed to the Hogans (husband and wife) for $900—$100 in hand and $800 evidenced by promissory notes, secured by a deed of trust on the forty—said deeds spread of record and the Hogans taking possession. In September, 1902, one Souders, collector of revenue for Butler county, brought suit as relator against Mangold, the Hogans and others in the Butler Circuit Court, returnable to the ensuing October term, to enforce the State's lien for taxes delinquent for 1900 and 1901. Summons issued, Mangold and three other named parties were served with copies on the 19th of November. Thereafter, in that month, to stop further proceedings and to protect his equity in the forty, Mangold (living away from the county seat) wrote Souders for the amount of taxes, penalties, fees and costs. Souders, in December of that year, sent him a statement showing them to be $15. Thereat, Mangold on the 26th of that December paid Souders, as collector, in full, and Souders sent him a tax receipt and at the same time marked the tax book paid in full for those years. Thereby (so the

bill states) the State's lien was satisfied and extinguished. Notwithstanding that fact, thereafter the sheriff summoned the Hogans and thereafter made return of his writ showing personal service on all the defendants. On the last day of December, 1903, the Hogans, by their deed spread of record, reconveyed the forty to Mangold for $800. Relying on the fact that he had paid his taxes due, together with penalties, etc., thereby satisfying and extinguishing the State's lien, Mangold paid no further attention to the tax suit —in good faith believing, as did each of his codefendants, that the suit would be dismissed by Souders, and that no further proceedings would be had therein. Notwithstanding all the foregoing facts, Souders, without the knowledge of Mangold or his codefendants in the tax suit went on with that suit and in June, 1904, took judgment by default. (The judgment is in form and is set forth in the bill, but its narrations are immaterial to questions raised.) Subsequently, still without the knowledge or consent of Mangold or his codefendants, Souders sued out execution, put the same into the hands of the sheriff of Butler county, who, in August of that year, levied the same on the forty and advertised a sheriff's sale pursuant thereto. Subsequently, said sheriff on a day in that August, still without the knowledge or consent of Mangold et al., sold the forty at public outcry and it was struck off to Bacon on his bid of $12.50. Said bid (quoting) *"was a shockingly and grossly inadequate price for said land,"* then well worth $1200. Thereupon the sheriff executed a deed to Bacon on his bid and he is now claiming title to the *locus in quo* under the tax judgment, execution and deed, which tax judgment and tax deed are a cloud upon Mangold's title. (NOTE: The averment as to inadequacy of price, heretofore quoted and italicised, was interpolated as an amendment into the original bill after the cause went down. So, the following quoted and underscored averment is an amend-

ment made at the same time.) *"Plaintiff further states that all proceedings in said back tax suit had after the payment of the taxes sued for and after entering the same paid on the tax books are and were frauds upon the rights of this plaintiff; and that the defendant, at all times, had, or, by the exercise of reasonable diligence could have had, actual as well as constructive notice and knowledge of all the facts pleaded in this petition."*

The bill makes a tender and offer to refund to Bacon his bid. On such premises Mangold prays the tax judgment be declared void, that the tax deed be canceled and for naught held, and for such other and further relief in the premises as to the court may seem meet and proper.

The answer admits those allegations relating to the tax suit, judgment, execution, levy, sale, and tax deed which are favorable to defendant's title, denies all other allegations and avers that the tax judgment and deed effectually extinguished plaintiff's title and conveyed his interest to defendant, who thereby became sole and absolute owner of the forty, leaving Mangold no estate, title or interest whatever therein.

The questions are two, viz.:

(1) Was the petition good as against an objection to the introduction of testimony?

(2) Shall we adhere to certain rulings made, when the case was here on the former appeal, in particulars hereinafter appearing, (and herein of *res judicata,* as the law of the case on its second appeal).

As a foreword, it is not amiss to say that we are not dealing in this case with the vendee of a purchaser at a tax sale who may hold under a warranty deed or for full value. Neither is there a *collateral* attack made upon a tax deed or a tax judgment. The attack in this instance is *direct* and leveled at both. Neither is it necessary to plaintiff's relief that both judgment and deed be set aside. Disposing of the deed will dis-

pose of the controversy.  Nor have we a stale claim, involving laches by one who slept on his rights.  *Per contra,* the suit is timely and shows diligence.  We are not concerned therefore, with cases of that character.

I.  Of the first qustion raised: Was the amended bill so bad that testimony could not be heard?  This phase of the case will be considered solely from the standpoint of Mangold v. Bacon, supra, as set forth in the majority opinion.

When the case was first here the bill as then framed was criticised by our brother GRAVES, who spoke in the principal opinion for a majority of his brethren after this fashion: The bill does not count on *fraud* in the actual sale.  It charged no notice to Bacon of irregularities nor did it charge inadequacy of price except inferentially.  It suggests no wrong by the purchaser.  It shows the suit brought on the narrow and only theory that mere payment of the taxes prior to judgment, *ipso facto,* and without more, rendered the judgment void.  That theory is based on the Harness case (126 Mo. 233).  The Harness case is too broad in that (quoting): "There is much said in that opinion [the one in the Harness case] which has never been approved by this court from the day it was written."  However, recognizing possible merit in Mangold's claim, the principal opinion reversed and remanded for the very purpose of permitting an amendment expressly alleging inadequacy of consideration, fraud and notice to Bacon.  Comment is further made that, if in the case, the issue of inadequacy of price was not tried out below at the first trial—this, because of certain rulings of the trial court on the admission of testimony on value.  Our learned brother, summing up in that behalf, says: "On the idea that this question is in the case, the cause should be reversed and remanded to the end that such question can be tried on proper evidence."  [Pp. 475-6, *q. v.*]

As we read the opinion, its first three paragraphs lay stress upon certain propositions, viz., that fraud, inadequacy of consideration and notice to Bacon are not pleaded in the original bill as grounds of recovery; that the trial theory, therefore, was different from the appellate theory; and that the cause should be reversed and remanded on that account with a door open, an option, to so readjust the bill as to permit those issues to be raised and threshed out—witness the following excerpt (p. 477) : "For the reasons (1) that the petition is not framed upon the proper theory, and (2) that the theory presented here to sustain the cause below is totally different from that adopted below, we feel that the cause should at least be reversed and remanded."

It is true that paragraph 4 waives the question as to whether there is a sufficient charge of inadequacy of price to make that a trial issue (*i. e.*, by assuming, *arguendo*, that the issue was in the case), and then goes on to dispose of it by holding that mere inadequacy of price alone will never vitiate an execution sale or set aside a sheriff's deed—to this feature we will return later in discussing the second question. For the present it is sufficient to consider the amended petition in connection with the granted leave for amendment and in connection with our mandate reversing and remanding for another trial. To that end, attend further to the principal opinion. Paragraph 5 concedes "that facts may be alleged from which a charge of legal or actual fraud may be inferred," and proceeds to comment on the lack of any allegations connecting Bacon therewith—his lack of knowledge of the fact that taxes had been paid prior to the judgment, upon the fact that Mangold knew and Bacon did not know of such fact, that there was no charge of Bacon's knowledge, that the petition should allege and the proof show knowledge on his part of the facts constituting the fraud in the sale—none of which averments

of fact, it was said, appeared in the bill as then framed. Wherefore, being "impressed with the idea that a wrong theory as to pleading was adopted by plaintiff," our learned brother GRAVES says, "The safer plan is to reverse and remand the case." Accordingly, the final order was: "Following the safer plan, let the judgment be reversed and the cause remanded, to be further proceeded with in accordance with the views in this opinion expressed."

It will thus be seen that in so far as the principal opinion dealt with the original bill from the standpoint of a pleading it held it amendable. Amendment was suggested and, *inter alia,* the cause was remanded for that very purpose. When the case went down the bill was amended so as to allege inadequacy of price grossly shocking. Further, so as to characterize the facts set forth as frauds upon the plaintiff's rights; and further so as to allege that Bacon had actual notice and knowledge, or by the exercise of reasonable diligence would have had notice and knowledge, of all facts pleaded in the bill. We are not dealing now with the quantum of proof necessary to show notice or the quantum of proof to show such facts and surrounding circumstances as put Bacon upon inquiry, which diligently pursued would have led up to knowledge of plaintiff's equities and therefore stand in law as equivalent to knowledge. It is not inconceivable that plaintiff may produce facts showing either actual or constructive notice to Bacon of the payment of the tax, or actual or constructive notice that plaintiff relied on an agreement with the collector (express or implied) to dismiss the suit, or notice of such facts as would indicate to a reasonably prudent person that there must be something radically wrong and irregular in a tax sale with personal service on a presumably well known citizen, when forty acres of his land with a clear title, valued at $1200, is put up at sheriff's sale and knocked down under the hammer for $12.50—a

sale presumably made in the presence of the collector, who represented the State, and of his attorney, who represented him, and which was permitted to result in the travesty that the tax-gatherer gathered in no tax, while Mr. Bacon gathered in Mangold's farm (for we shall assume that $12.50 was not more than suffi- cient to pay the ordinary costs of suit plus the sher- iff's advertisement). But it is not for us at this time to point out the kind, quantity and quality of proof plaintiff should or may make or what steps he should or may take to thoroughly sift the consciences of all engaged in a transaction so singular and astonishing.

It is stoutly argued for defendant that the amend- ments in nowise cured the ills of the bill from the standpoint of the majority opinion. As to this we say: True it is, the facts constituting the fraud should be set forth. A mere charge of "fraud" is a conclusion. It amounts to nothing as an averment of fact. Assum- ing that good doctrine, yet it does not apply here, be- cause: In the dissenting opinion at the first hearing it was insisted that the *facts* were pleaded, and if they constituted a fraud in fact or law that the mere epi- thet "fraud" was not necessary. Why write *horse* under the apt picture of a horse?—a correct outline of the *equus caballus?* The principal opinion, to my mind, did not controvert that proposition, but rode off on the theory that *fraud* was not the trial theory, and that the petition did not count on fraud as a ground of relief. The amendment supplied that al- leged deficiency, and the pleading as it now stands sets forth the facts and charges that those facts con- stitute a fraud. Upon all the facts plaintiff predi- cates his right to relief. There are now an allegation of fraud (with a blazoning forth of the bundle of alle- gation of facts making up the elements of the fraud), an allegation of notice to Bacon, plus an averment of a consideration "shockingly and grossly inadequate," viz., $12.50 for land worth $1200. It seems the

pleader did not see fit to express his thought in the trite phrase, ''a consideration so grossly inadequate as to shock the conscience.'' He pretermits the word, ''conscience,'' but employs the adverb, ''shockingly.'' But that word involves the idea of shocking *something*. What is that something if it is not the conscience or the understanding of a just, an average man, or the understanding of such a man quickened by his conscience, or the conscience of such a man illuminated by his understanding? To shock is to cause to tremble, to recoil, to stun. (Web.) ''A shockingly and grossly inadequate price for said land'' can mean nothing else than a price so trifling, so disproportionate to value, as to cause the conscience or understanding (or both) of a just man to be stunned, to recoil, to tremble—to instinctively cry out against it. While the allegation is not as apt and rounded as it might have been, yet, aided by the reason of the thing, it will do. It must be tested in an excessively sour and illiberal way, as if by acid, to detect any flaw in it.

In discussing the second question, further on, we shall have something to say of the scope and legal effect of certain averments in plaintiff's bill. For the present we hold the amended bill stated a cause of action, viewed even from the strict point of view of the majority opinion, and that plaintiff was entitled to go fully into his proofs.

It results that the trial court erred in excluding testimony and that the judgment will have to be reversed and the cause remanded for the foregoing reason, if for no other.

II. Of the second question: Shall we adhere to the doctrine of the majority opinion when Mangold v. Bacon was first here?

If we stand by its doctrines precisely as pronounced, this case will have to be tried, when again sent down, in accord with its conclusions. It becomes

vital matter, therefore, to say whether they shall control, or whether they shall be modified. The case has been heard thrice in this court, much time has been given to it, much has been written on it; hence, it seems sensible to so rule that the end may be reached on the next trial.

A preliminary controversy arises bespeaking settlement, viz.: Have we the judicial discretion to modify the former decision, or are issues of law foreclosed and finally settled thereby, once for all? Suppose the propositions and conclusions there pronounced do not now meet our approval, does the opinion, notwithstanding that, finally lay down the law of the case? Are our former conclusions not in the nature of *res judicata?*

For defendant it is argued that the case was soundly ruled when here first and the opinion asserts clear equitable doctrines on the facts then before the court; but that (further and at all events) whether right or wrong, the conclusions there announced became and must remain the law of this case at every subsequent step. *E converso,* counsel for plaintiff argues that the first opinion declared a doctrine too narrow in certain particulars and that the error is open to correction on the second appeal—all this on recognized rules of practice.

The general question now up may, therefore, logically divide itself into two, viz.:

Are we free to reconsider or reformulate any doctrine announced in the majority opinion when the case was first here?

If so, shall we reassert or modify them?

Of these questions in the above order.

(a) The general rule, nakedly and baldly put, is that legal conclusions announced on a first appeal, whether on the general law or the law as applied to the concrete facts, not only prescribe the duty and limit the power of the trial court to strict obedience and

conformity thereto, but they become and remain the law of the case in all after steps below or above on subsequent appeal. The rule is grounded on convenience, experience and reason. Without the rule there would be no end to criticism, reagitation, reexamination, and reformulation. In short, there would be endless litigation. It would be intolerable if parties litigant were allowed to speculate on changes in the personnel of a court, or on the chance of our rewriting propositions once gravely ruled on solemn argument and handed down as the law of a given case. An itch to reopen questions foreclosed on a first appeal, would result in the foolishness of the inquisitive youth who *pulled up his corn to see how it grew.* Courts are allowed, if they so choose, to act like ordinary sensible persons. The administration of justice is a practical affair. The rule is a practical and a good one of frequent and beneficial use. Witness: Overall v. Ellis, 38 Mo. 209; Bank v. Taylor, 62 Mo. 338; Viertel v. Viertel, 212 Mo. l. c. 573, et seq. and cases cited; Chapman v. Railroad, 146 Mo. l. c. 494; Carey v. West, 165 Mo. 455, and cases cited; May v. Crawford, 150 Mo. 1 c. 524; Hayward v. Smith, 187 Mo. l. c. 476; and many other cases that might be cited.

But there are exceptions to the rule as well recognized as the rule itself. Those exceptions evidence a flexibility adjusting the rule to needs of refined justice by the exercise of a high and discriminating judicial power. We owe a duty to enforce the exceptions as well as the rule; for exceptions prove the rule. They confirm the law; therefore expound the law. Without undertaking to state the exceptions with precision, the scope and trend of them may be arrived at by a summary review of some of the cases. Thus:

In Chambers v. Smith, 30 Mo. 156, a very strong pronouncement of the general rule in Roberts v. Cooper, 20 How. 467 (*quod vide*), was considered and we

held we did not adopt the strict rule forcibly stated in the Roberts case by Mr. Justice GRIER, viz.: That a second appeal or writ of error brings up for revision nothing but the proceedings subsequent to the first mandate." . . . "There would be," said Justice GRIER (p. 481), "no end to a suit if every obstinate litigant could, by repeated appeals, compel a court to listen to criticisms on their opinions, or speculate of chances from changes in its members." Commenting on that drastic pronouncement, we said in the Chambers case that if "some general principle of law has been manifestly decided incorrectly the first time, or injustice to the rights of the parties would be done by adhering to the first opinion," the first opinion should be departed from. So, in Keith v. Keith, 97 Mo. l. c. 231, it was said the general rule was that only such questions will be noticed on second appeal as were not determined on the former appeal. In that case the question decided on second appeal was held to be within the rule because not considered on the former appeal. Hamilton v. Marks, 63 Mo. 167, is a very notable case. It is a leading example of departure from the general rule. We there held that where a case had been in the appellate court and is sent back, then, if retried in conformity with the principles announced by the higher tribunal, and it is again taken up, "cogent and convincing reasons must exist to induce a re-examination of what ought to be considered as *res-judicata.*" (p. 172.) In that case those reasons were found to exist and the former opinion (52 Mo. 78) was departed from. Fuchs v. St. Louis, 167 Mo. 620, is a notable case—a *cause celebre,* about which traditions fondly linger. It had been up before (133 Mo. 168) and the proposition was presented whether the conclusions reached on the former appeal were any longer open to dispute. It appears, however, that in the first case the cause was taken from the jury on plaintiff's evidence. On the second appeal the defendant's evi-

dence was in the record. It was held, first, that appellant was entitled as of course to have its complaints reviewed as to matters appearing in the present record; and, moreover, that the facts of the two records differed in essential particulars. However, there was a plain divergence between the two opinions, and the later expressly overruled the former so far as in conflict (pp. 652-3). In Boone v. Shackleford, 66 Mo. 497, it was ruled that we did not adhere with strictness to the doctrine that no question before the court on the first appeal or writ of error could be reheard or examined on the second appeal or writ. It was said in that connection that we had adopted the rule "with qualification that it (the court) would reconsider its former adjudication where no injustice or hardship would result from reviewing and if wrong, overruling its former decision . . ." In Bird v. Sellers, 122 Mo. l. c. 32, it was ruled that an erroneous judgment by this court resulting from a mistake of fact, operates as an exception to the general rule. That the rule that whatever has once been passed upon in an appeal will be taken upon a second appeal in the same case as no longer open to dispute, "is not an inexorable rule without exceptions, but has been frequently departed from, when such adjudication has been found wrong, not in harmony with other decisions of the court, and no injustice or hardship would result from overruling the former decision." In Gwyn v. Waggoner, 116 Mo. l. c. 151-2, and in Beasley v. Smith, 158 Mo. l. c. 522-3, there are instructive collections of cases in this court, showing departure from the strict rule. By way of comment in the Beasley case it was said that reexamination is "rather a matter of grace by the court than of right in the parties. No court, however, ever refused to grant the privilege in a proper case." In Bank v. Donnell, 195 Mo. l. c. 571, BRACE, C. J. (speaking to the exceptions to the rule), says for all his brethren in Banc, that "cogent and convincing reasons must

exist to induce a reopening on the second, of questions decided in a former appeal." So, in Rutledge v. Railroad, 123 Mo. l. c. 131, it was ruled there was "no immutable fiat of jurisprudence forbidding a change of rulings on a second appeal . . . Courts of last resort occasionally find it proper and just to overrule, and thus correct, their former declarations of legal principles." "It sometimes is a matter of congratulation" says BARCLAY, J., "that justice can be finally done, in that manner, in the same cause on a later appeal when necessary." In Kelly v. Thuey, 143 Mo. l. c. 438, is this: "It would be of most pernicious consequence if every error which occurs in this court should bind the parties litigant on a retrial." Gannon v. Pauk, 200 Mo. 75, was a case where the court below retried a case in conformity with the opinion of Division One on first appeal. But on second appeal the former opinion was entirely departed from. We commended the trial court for following our first opinion and said such course was seemly, that it was for this court to do away with its own confusion of tongues and speak with an authoritative voice. The Gannon case was one of conflict between Banc and Division and between Division and Division in construing the same clause of a will.

Verily, a court has a natural right to change its own mind. In Padgett v. Smith, 205 Mo. 125, it was pointed out that it was necessary to preserve unimpaired that natural right—one to be guardedly and discriminatingly used in the exercise of a high power. An appellate court is a court for the correction of errors —its own as well as others. In correcting the errors of lower courts we do not proceed on the theory we make none of our own. [Donnell v. Wright, 199 Mo. l. c. 317.] I have read somewhere an apt paraphrase by a wise judge on Lincoln's apothegm, anent fooling all the people all the time (judge and case both gone by some *lapsus memoriae*), viz.: "A court may know

all the law part of the time, and part of the law all the time, yet may not know all the law all the time."

The exceptions to the general rule doubtless are allowed to avoid the mischief of such human infirmity.

But we have pursued the matter far. The general rule does not strictly involve *res judicata,* as that term is known to the law, when a cause has been reversed and remanded for a retrial with leave to amend. Such case is still in the bosom or protection of the law (*In gremio legis*). Strict *res judicata* is allowed a rather remarkable and prodigious potency. It is conclusive estoppel by record. It, in effect, makes of white, black; of black, white; of the crooked, straight; of the straight, crooked; that is, the very end has come without further quibble or doubt. [North St. Louis Gymnastic Society v. Hagerman, 232 Mo. 702.] It admits of no exceptions. It is a bar conclusive between parties and privies when the same point is again in issue. We have used the strong term, *res judicata,* in cases in connection with the general rule. Possibly that use of the term is a little due to poverty of our language in expressing nice shades of thought, or by way of analogy. However that be, the exceptions to the rule show the term, *res judicata,* in all its strictness, is an inappropriate or loose expression in that connection. It would be better to say "in the nature of *res judicata.*"

The premises considered, the sum of the matter is this: Whether from grace or right when cogent and convincing reasons appear, such as lack of harmony with other decisions and where no injustice or hardship would flow from a change, or where by inadvertence principles of law have been incorrectly declared the first time, or mistake of fact has been made, or injustice to the rights of parties would be done by adhering to the first opinion, then the exceptions to the rule have play and it is our duty to re-

examine and correct our own errors on the second appeal in the same case.

We hold the instant case falls within the exceptions. That conclusion brings us to the second subdivision of the general question under this head, to which we pass.

(b) Of the majority opinion on the first appeal. Should we reassert or modify its doctrines? We think they should be modified.

(1) That opinion held, in effect, there was no fraud in the concoction of the tax jugment on the facts then before the court. After consideration, the court barely missed being equally divided on that proposition. In the light of reargument and reconsideration we do not think it sound equitable doctrine. Mangold, sued for taxes, was personally served. He then had a mortgage on the land for its purchase price and before judgment held the whole record title. When sued he played the ideal role of a good citizen, bowing his neck promptly to the yoke of paying his pro rata tribute to the State. Thereby he rendered to Caesar the things that were Caesar's. He wrote the officer charged with the duty of collecting taxes asking to be informed of what the State demanded at his hands. We have no disposition or call to coyly toy, palter, quibble or split hairs with or over the mere verbiage of his letter. That letter must be read in the light of the situation known to the officer. The situation was this: He had sued Mangold for taxes and to foreclose a lien. Mangold wanted to pay and get out of trouble. So that if he did not inquire specifically and technically for the costs in the circuit court his letter was sufficient and meant so much. It was in effect a request to the State for the amount that would discharge taxes due, the lien thereof, and put him and his land out of danger. The officer, responding for the State, notified him of the amount. That amount he paid. The officer then sent him an acquit-

tance, marked the tax books satisfied, and Mangold went his way. Two conclusions naturally flow from what happened, viz.: First. Mangold in good faith performed what he thought was his full duty in the premises. Second. The officer must be held to know (absent further notice, as here) that he would rely on his payment and receipt as a full acquittance and a shield against all danger. Agreements are express or implied. An implied agreement is as much an agreement as if express. While there was no express agreement between the officer and Mangold that the suit would be dismissed, yet equity, which looks with a piercing eye through the shell of a transaction and searches out its very heart, sees in what happened an implied understanding between the officer of the State and the citizen to that effect. And sees, further, that the citizen would naturally rely on that understanding. For such officer without notice, through carelessness or design, to take a false judgment on behalf of the State for taxes so freshly paid and in the teeth of a transaction lulling the citizen into security, amounted to a fraud upon the State *involving its honor,* a fraud upon the court *making it an instrument of injustice* and a fraud upon the citizen *tricking him out of his rights*—all this, too, in such extrinsic and collateral matters as avoid the judgment for fraud. We know of no rule of equity, or public policy, making such judgment impregnable to attack. We think this conclusion is well within the doctrine of Clyce v. Anderson, 49 Mo. 37; Bresnehan v. Price, 57 Mo. 422; Wonderly v. Lafayette County, 150 Mo. 635; Lee v. Harmon, 84 Mo. App. 157; Howard v. Scott, 225 Mo. 685. Those cases are reviewed in the dissenting opinion in Mangold v. Bacon, 229 Mo. 1. c. 487, et seq. and no new exposition is necessary.

The State could not be sued *eo nomine.* The collector to whose relation the tax suit was brought has become *functus officio.* The party who asserts rights

under the judgment, from the very necessity of the thing, becomes a proper party defendant in a suit to set it aside (Bagley v. Furnace Co., 120 Mo. 248), and that person is Bacon.

On the facts here before, we are now of opinion the judgment in favor of Mangold, setting aside the tax judgment, should have been affirmed. If substantially the same facts should appear at the next trial, the circuit court should set the judgment aside. This conclusion is somewhat fortified by the fact that the lien of the State was exhausted and satisfied when the taxes were paid (Thompson v. Elevator Co., 77 Mo. 520), and there was no lien left to foreclose. Looked at from the standpoint of mere costs in the circuit court, that should be dealt with on the theory that officers to whom costs are due may not control, prevent or cut behind a settlement made by the collector. (Hoover v. Railroad, 115 Mo. l. c. 81.) They have no right to foreclose a discharged lien for taxes in order to get the incidental advantage of a judgment for costs.

(2)  Of inadequacy of consideration.

There is a question here not involving that of notice to Bacon of the payment of the taxes before judgment, viz.: May an inadequacy of consideration in a judicial sale, so gross as to shock the conscience, ever, without more, be sufficient ground in equity to set aside a sheriff's deed?

The question might arise under many different conditions. To avoid *obiter,* what we say at this time must be taken as strictly applicable to a case like the one at bar. This case proceeds on the theory that land worth $1200, in actual possession as a farm, in the absence of the owner and with no actual notice to him, sold under a tax sale for a sum insufficient to pay any taxes or to fully pay a pittance of costs, on a judgment on personal service—the purchaser claiming title.

The phrase "'shock the conscience'' means caus-ing the moral sense, the inward monitor, to be stunned, to recoil. Now courts of equity are primarily courts of *conscience.* Their ancient office was to deal with matter of conscience. When a cause is in chancery it is in conscience. The full consideration given this question in the majority and dissenting opinions (*q. v.*) when this case was here before must temper and circumscribe new exposition. We think the conser-vative and better doctrine is that a court of equity in Missouri, acting with caution and only in an aggra-vated case and when no aid from other equitable con-siderations is at hand, may set aside a sheriff's deed on the sole ground of a consideration so grossly inade-quate as to shock the conscience.

That inadequacy of consideration is not treated in books on equity as a distinct head of equitable relief, but under the head of fraud, is nothing to the point. The mere *name* amounts to nothing. If the inadequacy is so inflamed under all the facts as to spell fraud, then we have two things, each the equivalent of the other, viz., fraud and inadequacy.

Nor is it anything to the strict point that courts are fond of looking sharply about and laying hold of other equitable features, however small, when present, in aid of relief. This disposition (markedly evidenced in most cases) by no means shows that inadequacy of consideration of the character discussed may not be an all-sufficient ground of relief, when none other can be laid hold of and the case cries out for relief. It merely shows the delicacy of the matter, the extreme caution with which courts deal with it and the desire to fortify the principal ground whenever the facts permit. Nor is it conclusive on the point that cases may be found that state the general rule and leave off the exception, viz., "unless the price is so inadequate as to shock the conscience.'' Courts do not always take time to state modifications when stating a gen-

eral rule of law. Nor is it conclusive that cases may be found that apparently repudiate the exception. Of them it may be said that if we have ever departed from the exceptions to the rule, we have always come back to the broad doctrine sooner or later.

Guinan v. Donnell, 201 Mo. 173, was a late case in Banc and was unanimously ruled. The rule was there stated in this way: "It has always been held by this court that inadequacy of price alone will not justify the setting aside of a sheriff's sale of real estate under execution, *unless the price is so inadequate as to shock the moral sense and outrage the conscience. Then courts will interfere to promote the ends of justice*"—Citing cases. To the same effect are: Morriso v. Philliber, 30 Mo. l. c. 148; Hanson v. Neal, 215 Mo. l. c. 275; Cobb v. Day, 106 Mo. l. c. 300 et seq.; Walters v. Hermann, 99 Mo. 532; Knoop v. Kelsey, 121 Mo. l. c. 649; Davis v. McCann, 143 Mo. 177; Bispham's Eq. (7 Ed.), p. 330, sec. 219; 1 Story's Eq. (13 Ed.), sec. 245, 246; 2 Pomeroy's Eq., sec. 927; Osgood v. Franklin, 2 Johns. Ch. l. c. 24; Graffam v. Burgess, 117 U. S. l. c. 192 et seq.; Schroeder v. Young, 161 U. S. 334; Stephens v. Ozbourne, 107 Tenn. 572; Holdsworth v. Shannon, 113 Mo. l. c. 520 et seq. Rorer guardedly states the doctrine thus (Rorer on Jud. Sales (2 Ed.), sec. 549, p. 233): "If there be no fact or circumstance relied on to set a sale aside but inadequacy of price, then the inadequacy must be such as in itself to raise the presumption of fraud, or else the sale will not be disturbed. But if in addition to such inadequacy there be any appearances of unfairness, or any circumstance, accident, or occurrence in relation to the sale of a character tending to cause such inadequacy, then the sale will be set aside; but inadequacy of price is still the main ground of disturbing the sale, for if the price were full value, or even a passable one, then the objectionable facts or circumstances could have worked no evil."

Elsewhere in the same treatise is this (Sec. 1086, et seq., p. 405, et seq.): "Ordinarily, inadequacy of price is not alone sufficient cause for setting aside an execution sale which is in other respects unobjectionable, and when the sale is made to a bona fide purchaser. But when the inadequacy is such as to amount to a badge of fraud, or, together with other circumstances, is such as to shock the moral sense, and particularly when surrounded by indications of hardships and unfairness, the sale will be set aside."

Sec. 1095: "But although inadequacy of price will not alone be cause to set a sale aside, unless so gross as to raise a presumption of other cause, yet when inadequacy is combined with accident or appearances of fraud or unfairness, the sale will be set aside."

The majority opinion closed and locked a door heretofore open for use to reach relief in extreme and aggravated cases. That door should be left open — not only so, but *used* in this case on the facts here before, even if no other ground of relief appears. In so far as the majority opinion is in conflict herewith, it should not be followed.

We hold further that under the facts here before, the bid was so unconscionable that the judgment setting it aside should have been affirmed; and that if substantially the same facts appear at the next trial, the chancellor should annul it as a cloud upon Mangold's title. Such a bid under such circumstances was a red "danger signal of equities behind."

If plaintiff can show notice to Bacon of all the facts alleged in his amended bill, so much the better. But if he fail to show notice, and the facts develop again as before, he is entitled to relief not only on the ground of inadequacy of consideration but because of such accident, surprise, hardship and unfairness as naturally account for the inadequacy. We are not saying that equity requires a bidder at a tax sale to bid full value for the land, nor are we saying

that his bid should be sufficient under all and any cir-cumstances to pay all the tax. What we are saying is that where a citizen has paid his tax after suit brought and receives his acquittance under conditions here, and the tax books are marked paid, a purchaser who buys on a bid such as this, land of the value of this, in the absence of an owner misled as this, under the circumstances of this sale, holds the land subject to a timely bill in equity to cancel his deed on repay-ment to him of his bid as the price of a decree.

The chancellor at the next trial will proceed in accordance with this opinion.

The judgment is reversed and the cause remanded. All concur, except *Graves, J.,* who dissents in an opin-ion to be hereafter filed.

## DISSENTING OPINION.

GRAVES, J.—It was my intent to write a dissenting opinion in this cause before the principal opinion was handed down, but press of work pre-vented. I now avail myself of that privilege upon the pending motion for rehearing. It is perhaps well that the delay occurred, because an exceedingly inter-esting question is suggested by the motion not thereto-fore mentioned in the brief, and the whole subject can now be covered. Our rule 21 provides that a motion for rehearing "must be founded on papers showing clearly that some question decisive of the case, and duly submitted by counsel has been overlooked by the court, *or that the decision is in conflict with an express statute, or with a controlling decision to which the at-tention of the court was not called through neglect or inadvertence of counsel.*"

Under this rule, the motion calls our attention for the first time to a statute and two of our decisions, which counsel urge as conclusive of this case and we think rightfully. These matters, as well as others, I

shall discuss in the course of what I shall have to say of the record before us.

There is one matter discussed in the principal opinion that I shall dismiss with but short notice, although our brother LAMM has labored long to announce the doctrine. I concede that a court has the right to reverse its previous rulings even in the same case, as in the case at bar we have done, if the majority opinion stands, which I think will be the result. I concede that courts do this as an exception to the general rule, which general rule precludes such a course. I concede further that the object of the general rule was to put an end to the reexamination of questions once fully examined. I agree further that the object of the general rule, as stated in the opinion of our brother, was to prevent parties litigant from speculating "on changes in the personnel of a court" and to furnish a remedy for "an itch to reopen questions foreclosed on first appeal." Of course, litigants might with propriety suggest that a further object of the rule was to likewise protect holders of minority views on the first hearing from the afflictions of this itch, and the dire result of speculation on the changed personnel of the court.

But this is by the wayside, and I once for all concede that under the well considered authorities a court has the right to change its mind, even though the personnel thereof happens to be changed at the time. Judges come and go, but the court remains forever. I desire to discuss but two or three propositions.

I. In the motion for rehearing it is urged that the petition in this case fails to state a cause of action because there is wanting an allegation which our statute says must be in such petition. When it is remembered that this case is here upon a demurrer to the petition this matter becomes of vital importance to an orderly disposition of the case. That the point was

not raised before the present opinion was written cannot avail this court, nor the opposing litigant at this time. Neither this court nor the opposing litigant can hide behind the fact that it was not raised sooner, because our own rule provides that if a statute or controlling decision has been overlooked, the motion for rehearing is the proper time and place to bring such matters to the attention of the court.

Our statute, Revised Statutes 1909, section 11,508, provides: "No suit or action in any of the courts of this State, either at law or in equity, shall hereafter *be maintained* by any person or corporation, against any other person or corporation, for the determination of the title to, or for the recovery of the possession of, any lands which shall have been sold for taxes, or any interest in any such lands, or for the setting aside or cancellation of any tax deed or sale of land for taxes alleged to have been void, voidable or defective, unless such person or corporation so seeking to recover such lands, or some interest therein, or the setting aside of such tax deed or tax sale, *shall in his petition offer to refund to the defendant therein,* or to such other person or corporation, from whom and against whom such recovery is sought, in such action, *all taxes paid by such defendant,* or other persons, and his grantors, remote or immediate, or by those under whom he claims, together with interest thereon from the date of payment of such taxes to the date of the judgment in such action."

That this is a suit falling within the terms of this statute there can be no doubt. That the petition contains no such allegation there can be no doubt. Under such circumstances the petition cannot be held good without wiping out this statute. Nor can it be held good without overruling the very recent cases. But as we are now in the overruling business in the case at hand, the latter step above mentioned might be one easily taken. Not so, however, with the first.

A compliance with the statute in the matter of pleading is held to be a condition precedent to the maintaining of a suit. Not only so, but we have held that the statute must be construed strictly. [Manwaring v. Missouri Lumber & Mining Co., 200 Mo. l. c. 730.] In that case we said of this statute: "Besides, the act makes it a condition precedent to the maintenance of such suit that the plaintiff therein shall, in his petition, offer to refund to the defendant therein, or to such other person or corporation from whom and against whom such recovery is sought, all taxes paid by such *defendant* or other person. . . . The act is in derogation of the common law, and should be strictly construed, but it would require a very liberal and unwarranted construction to give it the construction sought to be placed upon it by plaintiff."

And further speaking of this statute, in the case of Haarstick v. Gabriel, 200 Mo. l. c. 245, VALLIANT, J., said: "But by the Act of March 6, 1903, a new legal obligation was imposed on an owner who should suffer his land to be sold for taxes, an obligation that did not exist before; it was the obligation to refund or offer to refund to the holder of the tax deed the taxes that had been paid and interest thereon."

It was nearly two years from the time Bacon purchased this property before the present action was begun. Under the plain provisions of the statute there should have been an offer to pay the taxes paid by Bacon, together with the interest thereon. Learned counsel for plaintiff evidently overlooked the statute, then the Act of 1903, and not in the Revised Statutes of 1899. For this oversight he alone is responsible.

So we say that unless this court desires to repeal by its judgment this solemnly enacted law, the motion for rehearing should be sustained, to the end that our opinion and judgment may be put aright, which opinion and judgment should be the affirmance of the judgment *nisi*.

II.   The majority opinion is clearly in error on another question.   It says: "If plaintiff can show notice to Bacon of all the facts alleged in his amended bill, so much the better.   But if he fail to show notice, and the facts develop again as before, he is entitled to relief not only on the ground of inadequacy of consideration but because of such accident, surprise, hardship and unfairness as naturally account for the inadequacy."

This is a direction to the trial court to find for Mangold at all events.   It amounts to that.   Now, in the former trial there was some evidence that the defendants in the tax suit, including Mangold, had knowledge that this land was advertised for sale under a tax judgment.   When the case was here before upon this point we said: "If the case is to be retried another bit of evidence deserves some consideration at the hands of the chancellor.   Daniel Cochran was a witness *in behalf of the plaintiff*.   His testimony strongly tends to indicate that the plaintiff knew that this land was advertised for sale under a tax judgment.   The testimony is not as clear as it might be, but no effort was specially made to develop the point.   As we have indicated, the theory of plaintiff seems to have been that when he had shown a payment of taxes prior to the judgment, that of itself voided the judgment, and no further proof or pleadings was necessary.   This theory is erroneous.   So that if upon retrial it should develop, that the evidence, as Cochran's testimony (fragmentary and incomplete as it is) tends to show, shows that plaintiff in fact knew that the land was advertised for sale under what he (plaintiff) claimed was a voidable judgment, and plaintiff with that knowledge stood aloof and gave no notice to protect purchasers under such judgment, there would be no doubt that plaintiff would be estopped from undertaking to attack a title that he thus permitted to pass. At least it would be a serious matter for consideration

in a fair disposition of the case. There is nothing in the present record to show that defendant had knowledge such as to place him upon inquiry, as in the case of Zweigart v. Reed, 221 Mo. 33.''

The opinion previously properly related the facts, but under the present opinion, if the facts are substantially as before, we direct a decree for Mangold. Suppose upon retrial, even on the same evidence, or upon evidence somwhat stronger and more pointed, it is shown that the defendants in the tax sale had actual knowledge of such sale, and stood out and rested in silence whilst Bacon with no knowledge of the alleged defect in the title, bought the land, can it be said that a court of conscience would tolerate that act upon the part of Mangold, the debtor in the tax judgment? We think not. Yet, that is this case, and we practically give directions for a judgment below. In this the opinion is in error.

III. (a) The opinion is further in error when it says that the State's lien was discharged by the payment of taxes alone. This holding is in the face of an express statute.

Section 11495, Revised Statutes 1909 (section 9301, Revised Statutes 1899), so far as applicable, reads: ''The collectors of the respective counties . . . shall proceed to collect the taxes contained in such 'back tax book' as herein required, and any person interested in or the owner of any tract of land or town lot contained in said 'back tax book' may redeem such tract of land or town lot, or any part thereof, from the State's or such city's lien thereon, by paying to the proper collector the amount of the original taxes, as charged against such tract of land or town lot described in said 'back tax book,' together with interest on the same from the day upon which said tax first became delinquent at the rate of ten per cent per

annum and the costs: *Provided, that if suit shall have been commenced against any person owing taxes on any tract of land or town lot contained in said 'back tax book,' for the collection of taxes due on the same, the person desiring to redeem any such tract of land or town lot shall, in addition to the original tax and the interest and costs accruing under this article, pay all necessary costs incurred in the court where the said suit is pending, together with such attorney's fees as the court may allow."*

This statute provides how the State's lien shall be released and discharged. If suit has not been brought a party interested "may redeem such tract of land . . . from the State's . . . lien thereon, by paying to the proper collector the amount of the original taxes . . . together with interest on the same from the day upon which said tax first became delinquent at the rate of ten per cent per annum and the costs." This is one method of redeeming from the State's lien. This method must be invoked, however, prior to suit to enforce the lien. The word "costs" as herein used refers to certain charges due the officers for making up the delinquent tax book. If suit to enforce the State's lien has been brought, then the statute provides other things to be done than the mere payment of taxes, interest and the costs above mentioned. The *proviso* contained in the statute above quoted applies to the situation after suit has been brought. Under that *proviso* the redemption is not complete, nor is the State's lien discharged until the party desiring to release from the State's lien shall "in addition to the original tax and the interest and costs accruing under this article, pay all necessary costs incurred in the court where the said suit is pending, together with such attorney's fees as the court may allow." The payment of these court costs are made by the statute a condition precedent to a redemption of the land from the State's lien. The plain

wording of this statute is overlooked by my learned brother in the opinion.

(b)  But a step further.  We have a statute (Revised Statutes 1909, section 11505) which says to whom the payments shall be made.  That statute reads: "Any party interested in any tract of land or town lot may pay the taxes, interest and costs thereon, after the commencement of suit, and before sale, by paying to the collector the amount of such taxes and interest, *and by payment to the circuit clerk of all costs thereon.*"

If the party desires to redeem land after suit he must pay at two places, (1) to the collector the taxes, interest and costs provided for by the revenue statute, and (2) to the clerk of the circuit court, the court costs.  This statute Mangold knew, or in law must be held to have known.  Under it he knew the collector was not attempting to give him a statement of more than the items which were payable to the collector. He knew, or in law must be deemed to have known that there were court costs which had to be paid to the clerk of the circuit court before the lien of the State was discharged.  He knew that he had been sued, and from that fact must follow the others.  So we repeat, as was said in the original opinion in this case, that the petition is, in so far as it attacks the judgment, bad because it fails to charge that the collector agreed to see that the suit was dismissed.  I concede that if the collector had received the taxes, interest and costs, and agreed to dismiss the case, then Mangold could have relied thereon, and if knowledge of this was brought home to Bacon, the plaintiff should recover. But there is neither pleading nor proof to this effect either at the previous hearing here or the one now. The law divided the payments in twain, and under it the duty was imposed upon the collector to receive that which was coming to him, but he was not authorized to receive that portion which was payable to the circuit clerk.  We have to deal with this case as if the plain-

tiff, Mangold, was as familiar with the statutes as is this court. In the present case, I should say more so, for the majority opinion seems to have lost sight of all these statutes.

IV. Nor do I concur in the majority opinion wherein is announced the new doctrine for this State that mere inadequacy of price alone may be held sufficient to avoid a sale under a tax execution. Upon the previous hearing we announced the rule that mere inadequacy of price alone would not authorize the setting aside of a deed made under such an execution sale. We then said and now say that such is the rule in this State, as shown by the overwhelming weight of cases in this State. The present opinion expressly overrules that opinion upon that point. Our learned brother says: "There is a question here not involving that of notice to Bacon of the payment of taxes before judgment, viz.: May an inadequacy of consideration in a judicial sale, so gross as to shock the conscience, ever, without more, be sufficient ground in equity to set aside a sheriff's deed?"

After discussing the case law upon the subject he answers the question thus:

"The majority opinion closed and locked a door heretofore open for use to reach relief in extreme and aggravated cases. That door should be left open —not only so, but *used* in this case on the facts here before, even if no other ground of relief appears. In so far as the majority opinion is in conflict herewith, it should not be followed.

"We hold further that under the facts here before, the bid was so unconscionable that the judgment setting it aside should have been affirmed; and that if substantially the same facts appear at the next trial, the chancellor should annul it as a cloud upon Mangold's title. Such a bid under such circumstances was a real 'danger signal of equities behind.'"

I do not subscribe to the doctrine thus announced, because I think it extremely dangerous, as I shall attempt to show, after I have discussed the cases. I desire first to take the Missouri cases relied upon by my learned brother.

The first is Guinan v. Donnell, 201 Mo. l. c. 202. In that case where the price paid was three per cent of the value, BURGESS, J., did use this language: "It has always been held by this court that inadequacy of price alone will not justify the setting aside of a sheriff's sale of real estate under execution, unless the price is so inadequate as to shock the moral sense and outrage the conscience. Then courts will interfere to promote the ends of justice. [Railroad v. Brown, 43 Mo. 294; Holden v. Vaughn, 64 Mo. 588; Knoop v. Kelsey, 121 Mo. 642; Davis v. McCann, 143 Mo. 172.]'' But even in that case the distinguished jurist later on brings to his consciousness of the law outside fraudulent circumstances, which when coupled with the unreasonable price, made the judgment *nisi* good. In the opinion he further says: "But even if the judgment and decree cannot be sustained upon the ground of inadequacy of price alone, yet when such inadequacy is considered in connection with the fact that Forsee was the attorney of M. S. C. Donnell in defending the suits wherein the judgments were rendered under which the lands were sold, and the action and conduct of Forsee in regard to the levy by the sheriff, and the sale of the lands under execution for which Guinan is alike bound, there can be no question as to the correctness of the judgment." The court then discusses the fact that one Forsee was Donnell's attorney, and that his conduct in the matter was reprehensible and that the plaintiff Guinan was bound by Forsee's acts. Those of this bench who participated in this case, realize that it was not inadequacy of price alone that forced the conclusion reached in that case. The language first quoted was not necessary for a disposition of that

case and to that extent at least is *obiter*. The record shows that gross inadequacy of price was coupled with gross conduct, which conduct alone was sufficient to void the deed.

We are cited to Hanson v. Neal, 215 Mo. l. c. 275, where our brother LAMM uses this language: "How did this sheriff measure up to the foregoing standard of duty? Not at all. Let the record tell the story. At the instance of appellants he made the sale at an unusual hour—itself a badge of fraud in the absence of a request from the parties in interest. He made it in the teeth of a reasonable request from the mortgagee to await the usual hour. While inadequacy of consideration as a general rule is not of itself a distinct principle of relief in equity (1 Story, Eq. [11 Ed.], sec. 245), yet in this instance he permitted the property to pass at so gross an inadequacy of price as to 'shock the conscience,' and when the conscience is shocked, the ear of the chancellor opens. [Ibid., sec. 246.] He did this at the request and to suit the by-ends (the so-called *convenience*) of bidders who were itching for a quick sale and a fetching bargain, and persuaded him to make it before the representative of the mortgagee could arrive from Neelysville. Not only so, but the mortgagor had a representative in Doniphan (Mr. Langford) who testified he was not present because of the untimely hour. The sale, then, was in very truth and fact made for the benefit of those who wanted to feather their own nests by sacrificing the interests of both mortgagor and mortgagee, and succeeded in doing that very thing." But who reading this opinion would construe it to announce the broad doctrine that mere inadequacy of price alone would obviate a deed under sale. In this instance it was a foreclosure sale, and not an execution sale.

We next have Morriso v. Philliber, 30 Mo. 145. This is an action to set aside a deed because procured by fraud. The deed was made by plaintiff to defend-

ant. The case is not parallel in any way to the case at bar. In this case the grossest fraud is shown. One Mulholland acted as the agent of both parties in the sale, and this without knowledge of plaintiff. Not only so, but plaintiff had lived with Mulholland at one time and depended upon him, owing to her own ignorance and illiteracy. That said Mulholland, acting as the agent of both, by deception induced the making of the deed where property worth $5,000 was bought for $75. In connection with this state of facts, Ewing, J., did say: "Although mere inadequacy of consideration is not deemed a sufficient ground of relief of itself, it may be so gross as to amount to conclusive evidence of fraud. But where there are ingredients in the case of a suspicious nature or peculiar relations between the parties, gross inadequacy of price must necessarily furnish the most vehement presumption of fraud. [1 Story, sec. 211.]" That case is far from announcing the broad doctrine our brother announces.

Next we have Cobb v. Day, 106 Mo. l. c. 300. The case is not in point but is authority the other way. In it Thomas, J., says: "It has been said that mere inadequacy of price, abstracted from all other considerations, is not sufficient to induce a court to afford relief against a contract or to set aside a deed. If a person with the eyes open will make a bad bargain, he must suffer by his own imprudence; he has no right to complain, no title to apply to a court of equity for relief. But this circumstance when connected with others which show that the person did not understand the bargain he made or was so *oppressed he was glad to make it,* knowing its inadequacy, will show a command over him which amounts to fraud. [Newland on Contracts, 359.]" This is not an execution sale case.

Following this, we are cited to Walters v. Hermann, 99 Mo. l. c. 532. Sherwood, J., speaks for the court in this instance. This was a tax sale, but the grossest fraud is made to appear as against minors.

We say, made to appear, because the petition charged gross fraud in the procurement of the judgment and the case rode off on demurrer below, and the lower court was sustained because there were subsequent purchasers involved and the pleading did not plead notice to them.  Judge SHERWOOD said: ''The only thing left, therefore, for consideration is as to the sale and the rights of the subsequent purchasers. Mere inadequacy of price is insufficient to set aside a judicial sale.  There must be some fraud in the transaction as a general rule, where the sale is open and no improper practices are shown on the part of the purchaser, unless the inadequacy is so gross as *per se* to amount to proof of fraud in one of its numerous manifestations on the part of the purchaser.  [Phillips v. Stewart, 59 Mo. 491, and cases cited; 2 Pom. Eq., secs. 926, 927.  Davis v. Dreisback, 81 Ill. 393.]'' It will be observed that this case is likewise authority the other way, as strong as it could be written.

Next we have Knoop v. Kelsey, 121 Mo. l. c. 649. This is an action to set aside a deed of trust for fraud. Judge MACFARLANE made use of this language upon which my learned brother evidently leans: ''It may also be said, as well settled, that, while gross inadequacy of the price paid for land at a sheriff's sale may be a badge of fraud, it is not sufficient alone to avoid the sale.  When such a sale is properly attacked, it is the duty of a court of equity to examine carefully all the circumstances, under which it is made, and very slight evidence of fraud, or unfairness, on the part of the officer making the sale, may be sufficient to demand its cancellation.  [Briant v. Jackson, 99 Mo. 598; Phillips v. Stewart, 59 Mo. 491.]  There are rare and exceptional cases in which the inadequacy is held to be so gross as to amount to a flagrant abuse of judicial process, and equity has granted relief on that ground alone.  [Railroad v. Brown, 43 Mo. 294; Cobb v. Day, 106 Mo. 300, and cases cited; Walters

v. Hermann, 99 Mo. 532.]'' In the latter portion of the quotation is the meat in the cocoanut. It is foundation for this new rule in the present case. The language of Judge MACFARLANE finds absolutely no support in either of the three cases upon which it rests. We have analyzed the Cobb-Day and Walters-Hermann cases just above. We have quoted from them so as to show that these two cases announced in plain terms the contrary rule.

It only remains to look at Railroad v. Brown, 43 Mo. 294, the third case relied upon by Judge MACFARLANE. A short excerpt from that case will suffice. WAGNER, J., in that case, did make use of this language: ''It will not be necessary to decide in this case, whether the gross inadequacy exhibited by the facts set forth in the petition would, if disconnected and alone, be sufficient to entitle the plaintiff to relief. It may be stated, as a general proposition, that inadequacy of consideration is not of itself a distinct principle of relief in equity. Nevertheless, where the transaction discloses such unconscionableness as shocks the moral sense and outrages the conscience, courts will interfere to promote the ends of justice and defeat the machinations of fraud.'' It therefore appears that Judge WAGNER did not undertake to decide whether or not mere inadequacy of price alone was sufficient to void an execution sale, and in fact made his decision turn upon other matters of misconduct and fraud.

So we repeat that two of the cases relied upon by Judge MACFARLANE announced the opposite doctrine, and the other refused to pass upon the question. But even the language of Judge MACFARLANE, supra, was merely *obiter*, because his case was not permitted to be ruled thereby.

Next in order, our brother cites us to Davis v. McCann, 143 Mo. 1. c. 177. In this case a sale under execution is attacked, but there were matters therein outside of the mere inadequacy of price. BURGESS, J.,

who wrote the Guinan-Donnell case, supra, likewise wrote this case. In this case he does use this language: "Inadequacy of price alone will not justify the setting aside of a sheriff's sale of real estate under execution, unless the price is so inadequate as to shock the moral sense and outrage the conscience. Then courts will interfere to promote the ends of justice. [Railroad v. Brown, 43 Mo. 294; Cobb v. Day, 106 Mo. 278; Knoop v. Kesley, 121 Mo. 642.]" He relied upon the Brown case in the 43 Mo., where WAGNER, J., declined to pass upon the question, the Cobb-Day case, supra, where the ruling is just the other way, and on the opinion of Judge MACFARLANE in the Knoop-Kelsey case, which opinion we have just fully discussed. So that it can be said that the only three opinions lending support to this new rule are the two written by Judge BURGESS and the one by Judge MACFARLANE, and in each of these the cases cited do not support the doctrine.

The last Missouri case which my learned brother cites is Holdsworth v. Shannon, 113 Mo. l. c. 520. This is an opinion by SHERWOOD, J., and does assist my brother in his opinion, in the case at bar, to a very slight extent. Judge SHERWOOD, made use of this language: "The general rule is stated in the books that mere inadequacy of price without more, *unless so gross as to shock the moral sense,* is insufficient to set aside a sale of land made under a deed of trust, foreclosure or execution. But in such case, the sale must be fairly conducted in all other respects." His case rode off solely upon other questions not connected with inadequacy of price as appears from page 522 of the opinion. Upon the whole, the case is not authority for the present opinion.

We have noted fully and fairly reviewed each and every case relied upon by my brother, and I desire to reiterate now, what was said in the opinion written when this case was here before, and that is that the doctrine announced in the present opinion as

well as the doctrine announced in the dissenting opinion upon the other hearing is absolutely contrary to the long followed precedents in this State.

I take next the cases announcing the rule. We begin with the early case of Hammond v. Scott, 12 Mo. l. c. 11, whereat we said: "We do not subscribe to the principle contended for by the complainant's counsel, that inadequacy of price alone is sufficient ground for setting aside a sheriff's sale. On the contrary, where the sale has been an open, fair and public one, where there has been no act done or superinduced by the sheriff or purchaser to prevent the property from selling for a higher price, public policy would indicate that such sales, although attended with great pecuniary loss, ought to be upheld and sustained. If the principle was recognized, its application would be entirely arbitrary, as no rule could be established to govern the innumerable cases that arise."

In Nelson v. Brown, 23 Mo. l. c. 21, we said: "There is no innocent purchaser here. The plaintiff in the execution becomes the purchaser at the sale for his own benefit; is present and privy to all that transpires. Under such circumstances, he is a purchaser with notice in fact, and is affected by the irregularities which occurred. We do not maintain that mere inadequacy of price is sufficient to set aside a sheriff's sale. But where there is a gross inadequacy of price, courts will require that there be a strict regularity in the proceedings. The irregularities attending the sale in question were such that it must be set aside."

In Meir v. Zelle, 31 Mo. l. c. 332, EWING, J., said: "The sale appears to have been conducted fairly and properly in all respects, and mere inadequacy of price is no ground for setting it aside, where this is the case."

In Parker v. Railroad, 44 Mo. l. c. 421, WAGNER, J., thus tersely announced the rule: "The mere fact that the lands sold for an inadequate price would not of itself be a sufficient ground to set the sale aside.

But when a man obtains an estate worth thousands for a mere pittance—a few dollars—if he is permitted to retain the same, it is necessary that he should have been guilty of no misconduct, and that he should have acted with the most exact good faith.''

In Wagner v. Phillips, 51 Mo. 117, we have a case where 160 acres of land worth $6,000 to $8,000 was sold for $108. The action was to set aside the sale for gross inadequacy of price, and other matters pleaded. On the question of inadequacy of price, Judge WAGNER said: ''The inadequacy of the price, taken by itself, would not be sufficient ground for affording relief; but when coupled with other facts, it is a circumstance entitled to consideration.''

No man ever upon this bench has had a clearer conception of the law and the rights of litigants than the late Judge BLACK. He had to deal with a case where property worth $3,000 was sold for $51, and in the course of his opinion, Gordon v. O'Neil, 96 Mo. l. c. 355, said: ''Mere inadequacy of price is not sufficient to set aside a sheriff's sale; but where there is gross inadequacy of price, the proceedings of the sheriff on the execution ought to be free from irregularities. [Nelson v. Brown, 23 Mo. 13.]''

In the case of Martin v. Castle, 193 Mo. l. c. 195, the petition charged that lands worth $8,000 were sold under execution for $106. The petition attempted to charge other irregularities. The lower court sustained a demurrer to the petition. This judgment was afterward affirmed, and in the opinion, among other things, it was said: ''The allegations of a combination between defendants and others to defraud plaintiff are not of such a character as would justify a setting aside of the sheriff's sale; nor is the difference between the alleged value of the land and the price which it brought at such sale sufficient to do so.''

In case of State ex rel. v. Boyd, 128 Mo. l. c. 135, a case where the sale was attacked before the deed was

made, Burgess, J., said: "While it may be conceded that a court has complete control over its writs and process, and may, at or before the return term of an execution, set aside a sale made thereunder, it must have some ground upon which to predicate its action, and in this case it has not been suggested in what manner the sheriff's sale was irregular, or anything else that justified the court in setting it aside. Inadequacy of the price at which the land was sold was not of itself sufficient."

And in Walker v. Mills, 210 Mo. l. c. 690, as to the rule we said: "It is next urged that there is inadequacy of price in such sale, and that this, when coupled with slight additional facts, will authorize the court to set aside a sale. It is true that where there is a gross inadequacy of price, coupled with some evidence of fraud or unfairness, an execution sale may be set aside under the authorities in this and other states."

We shall not pursue the Missouri cases further. Others may be found in the majority opinion when this case was here before. Suffice it to say that the present opinion is the only one in this State wherein it is said that a tax sale may be set aside for inadequacy of price alone. In no case has it been done up to this time. In all the cases cited by my learned brother, not one of them finally placed its ruling upon the new rule now invoked. Whilst there appears scattered mutterings about such a rule, yet in no case has it been applied.

In 2 Cooley on Taxation (3 Ed.), p. 959, the rule and the reason for it are thus tersely stated: "The insignificance of the price as compared with the value of the land sold will not defeat a tax sale; for if it should, the power to collect revenue by this method would be futile."

In 1 Blackwell on Tax Titles (5 Ed.), sec. 557, p. 497, the question is mentioned under the head of fraud.

It is there said: "Fraud vitiates everything. Contracts of whatsoever dignity, if tainted with fraud, are void at law and in equity. By it the most solemn proceedings of courts of justice are avoided; and we are informed by high authority that even an act of Parliament conceived in fraud may be declared a nullity. There is nothing in the nature of tax sales which exempts them from the operation of this general maxim. *On the contrary, a more rigid scrutiny into their fairness is demanded, because of the gross inadequacy of the price usually paid at such sales,* and the great inducements held out for the perpetration of fraud in the conduct of them."

We shall not go further with the authorities. We have hereinabove said that this new rule is a dangerous one and so we believe it to be. As said in Cooley on Taxation, supra, such a rule leaves a vast number of our land titles resting in the breasts of chancellors rather than upon the records. The stability of fair and open judicial sales is by such a rule wrecked. By such rule, the question whether or not at an open and fair judicial sale a title has been procured rests, not in the fairness of conduct of the sale, but in the elastic conscience of chancellors, whose judgments may be invoked. By such rule we have titles good in one circuit, and bad in another, owing entirely upon what it takes to shock the conscience of the particular chancellor therein. In this case, my brothers in the majority have been shocked by $12 for an alleged $1000 worth of land, but what shape would the chancellor *nisi* be in if the great weight of the evidence showed this alleged valuable farm to be worth only half that amount? Should his conscience then become shocked and a regular judicial sale set aside for inadequacy of price?

To my mind there has been no opinion of this court that will be followed by more disastrous results than the one in the case at bar. Land titles are made

dependent upon the sliding scale of shock to the chancellor's conscience. How variant these shocks may be remains to be seen in the great number of cases which will follow in the train of this opinion. The number of good paper titles now slumbering in the consciences of chancellors we do not know, but in all probability will find out when the majority opinion reaches the bar of the State.

We conclude by saying: (1) That the opinion is wrong because upon the face of the petition no cause of action is stated under the Act of 1903. Under that act, which we say must be strictly construed, the plaintiff must offer to pay all taxes and interest paid by the defendant, in order to state a cause of action. If as a fact no taxes have been paid by the defendant, then to comply with the law he should state that fact in order to account for the absence of the required element in the petition. The Act of 1903 uses the word *"shall"* and is mandatory and not directory. (2) That the petition was bad and the court *nisi* was right in sustaining the demurrer, because there was a failure to allege that the collector agreed to dismiss the suit. Under the law, the State's lien could not be discharged after suit, unless the party seeking to redeem paid the taxes, interest and county clerk's costs to the collector, and in addition paid the circuit court costs to the circuit clerk of the county. That the opinion is further in error when it says that plaintiff could rely upon his letter to the collector for all costs, because of the two statutes fully discussed above. (3) That the opinion is in error when in effect it precludes a finding for defendant, although the defendant might be able to show, as he practically did show on the first trial, that plaintiff knew his land was to be sold and yet sat by and permitted it to be sold to one having no knowledge of the alleged equities. (4) That to hold tax sales, made openly and fairly, bad for mere inadequacy of price paid, is to absolutely destroy our

method of collecting taxes, and is an innovation upon the long and well established rule in this State.

For these reasons, I think the motion for rehearing should be sustained, and upon a further hearing the judgment *nisi* should be affirmed.

PER CURIAM.—Respondent insists that we overlooked sections 11,495 and 11,505, Revised Statutes 1909. That contention is an inadvertent error on the part of learned counsel for Mr. Bacon. Both those sections were considered, though not mentioned. We are of opinion that neither of them goes to the question of the sufficiency of the petition on the right to have the tax judgment and sale set aside on the grounds considered in the opinion. Neither section warrants a false judgment for paid taxes, in order to recover costs.

It is further contended that section 11,508, Revised Statutes 1909 (Laws of 1903, p. 254), makes the petition demurrable. That section provides that in a suit to determine title or recover possession of land sold for taxes, etc., the person seeking that remedy shall offer in his petition to refund defendant the taxes paid by him with interest, etc. The next section, 11,509, provides that a defendant may plead by way of defense the judgment for taxes and pray that they be declared a lien and that such defense shall not affect the merits of other defenses. On such premises it is argued that plaintiff's bill does not comply with that statute, therefore we should not say that the court erred in refusing to permit the introduction of testimony.

Under the facts of this record defendant paid no taxes at the tax sale and his bid is tendered to him. As to taxes since that time the petition and answer are both silent. So that neither party availed himself of that statute. In such circumstances it is fair to assume that defendant paid no subsequent taxes on

the land. Indeed plaintiff, in opposition to the motion for a rehearing, suggests that defendant paid none. As the case is to go down for a hearing, we are not willing to "sacrifice the justice of the matter on the sharp edge of technicality." The statute only applies where taxes have actually been *paid* by defendant. There is no presumption that defendant had paid any. Shall we make a false assumption of fact in order to cut off plaintiff on a demurrer?

Furthermore, it is clear from the admissions of counsel that the ground now urged was not presented to the trial court. The case has been here twice and such ground does not appear in any brief. It makes its virgin entrance bow on the stage in the motion for a rehearing. Evidently, the case was not decided below on any such theory, and it should not be decided above on that theory. We have reversed the case and remanded it for a new trial. To avoid doing injustice to either party, we will modify the directions so as to permit plaintiff to amend his bill and make an offer to return all taxes and defendant to amend his answer so as to claim a lien for taxes paid if the facts warrant either party in doing so.

The motion for rehearing is overruled.